# CURTIS DAVIS and Others *vs.* AMELIA REED.

It is no objection to the frame of a bill for an injunction to restrain a trespass upon the ground of irreparable mischief, that it *charges* the injury to be *almost,* instead of absolutely, irreparable.

The omission of the *charge* of irreparable mischief would not be a defect in a bill otherwise good, because the *court* must be satisfied, from a *statement* of the grievances, that the injury would be irreparable, and it is enough if the court can discover this from the allegation of facts.

Acts which would result in the destruction of all the timber on a man's home-plantation, where wood and timber are necessary to the enjoyment of the property in *that character,* are sufficient to authorise an injunction to restrain the cutting of such wood and timber.

The fact that the bill was not filed until after the injunction was ordered, is, at most, but a mere irregularity, which cannot operate a reversal of the order granting it.

It is a practice in some of the counties to order the injunction before the filing of the bill, and where a practice has become inveterate, it is better to adhere to it till changed by a prospective rule, than to incur the risk of doing injustice to a party who may have followed it.

APPEAL from the equity side of the Circuit Court for Caroline County.

This appeal is taken from an order granting an injunction upon a bill filed by the appellee against the appellants.

The bill alleges that Isaac Wright, who died in 1850, by his will, devised to his daughter, the complainant, a tract of land called the "Old Nichols Farm," whereon she now resides; that this land is part of that originally owned by Isaac Nichols, and was conveyed by James Brown, as insolvent trustee of Daniel Caulk, to Wright, in 1827; that the complainant has been in the quiet and peaceable possession of the arable land included in said farm, ever since the decease of her father, and also of the woodland attached thereto, and that her father was in the peaceable possession of the same from the time of his purchase thereof to his death; that among the land always included, and held and used, occupied and cut upon, as part of this farm, by her father, and all tenants and occupants under him, is an adjoining piece of timber land, containing about thirty-five acres, more or less; that about the month of January 1855, the defendants commenced cutting and destroying the timber upon the same, and are now engaged with a large force, from ten to fifteen in number, cutting and destroying the said timber, and have announced their determination to cut and carry off all the timber thereon, despite the entreaties and remonstrance of the complainant; that her said tract of land has no more timber thereon than is absolutely necessary for said farm, including the part now nearly cut down and destroyed by the defendants; that the destruction of the said timber land will be of great and *almost* irreparable injury to her said farm; that no compensation in damages, for the actual value of said timber, will compensate her for such destruction of said timber; that she intends instituting suits of ejectment and trespass against the said parties, but before the same can be brought to trial, all the wood and timber on said land will be destroyed and carried off, as one-half thereof is now cut down, and the said parties have announced their intention not to desist until the whole is cut down. The bill then prays for an injunction restraining the defendants and

20    v. 14.

their agents and servants, from all manner of cutting and waste upon said tract of timber land, and from hauling off or removing from the same the timber and wood already cut and now on the premises.

The bill refers to the will of Isaac Wright and the deed from Brown to Wright, as the title papers under which the complainant claims, and states that they are filed as exhibits with the bill and made part thereof, but they do not appear in the record, which states that "the exhibits referred to in the aforegoing bill have never been filed."

The court, (HOPPER, J.,) by an order endorsed on the back of the bill, and dated the 11th of April 1855, ordered the injunction to issue as prayed, and the writ was issued on the 19th of April, the day on which the bill was *filed.* From this order the defendants, after filing their answer, appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON, TUCK and BARTOL, J.

*Oliver Miller* for the appellants.

It is evident this injunction was ordered before the bill was filed, and the exhibits have never been filed at all. There is indeed nothing in the record to show that the exhibits were ever before the judge. No bond was required by the order and the injunction issued without it. The appellants insist the order was erroneous:

1st. Because it is error, and a practice not to be sanctioned, for any judge of an equity court to exercise the high power of ordering an injunction before the bill which asks for it, and the exhibits, referred to in and accompanying it, are regularly filed in his court. The order was passed *nine days* before the bill was filed, and the exhibits, if before the judge, were never filed. In reviewing this order these exhibits are all important to this court, and, if in the record, they might show, by their true construction, that the particular piece of land, upon which the alleged trespass is said to have been committed, was no part of the farm in question. The Act of Assembly having allowed an *appeal* from such an order, the exhibits,

which are a part of the bill, must be before this court in order that it may revise the action of the court below in passing the order.

2nd. Because the allegations of the bill do not make out a case authorising the granting of the injunction. The settled law of this State, upon this point, is, that where an injunction is asked for to restrain a trespass, on the ground of *irreparable* injury, the bill must *charge* the injury to be irreparable, and state *such facts* as will satisfy the conscience of the court, that this *charge* is well founded. This bill contains no such *charge* as the result of the acts complained of, and this court cannot assume, from the facts alleged, that the injury is greater than what the complainant herself *charges* it to be. The allegation is not that the injury is irreparable, but that it is *almost* irreparable. On this point see 9 *G. & J.*, 468, *Amelung vs. Seekamp;* 4 *Gill*, 34, *Hamilton vs. Ely;* 4 *Md. Rep.*, 98, *Green vs. Keen;* 7 *Md. Rep.*, 414, *Shipley vs. Ritter;* 7 *Johns. Ch. Rep.*, 315, *Jerome vs. Ross*.

*Thos. G. Pratt*, for the appellee, argued:

1st. That the right to appeal from an order granting an injunction is conferred exclusively by the Act of 1835, ch. 380, sec. 3, and an appeal from such an order is equivalent to a demurrer to the bill admitting all its allegations, and if the bill discloses facts which authorized the issuing of the injunction, it will not be dissolved by the appellate court. 6 *Gill*, 101, *Wagner vs. Cohen.* 7 *Md. Rep.*, 398, *Guyton vs. Flack*.

2nd. That where the act complained of would deprive the citizen of the use of his estate in the *manner* he had antecedently used and enjoyed it, an injunction is the proper remedy. The complainant here had the right to use the timber on her land for fuel, and all the purposes for which it is used upon an estate, and an injunction was proper to prevent the defendants from depriving her of this privilege. 7 *Md. Rep.*, 413, *Shipley vs. Ritter*. The bill states facts making out a case of irreparable mischief, and where this is done to satisfy the conscience of the court, it matters not what the complainant's own opinion of those facts may be. It is for the court to say

Davis, *et al.*, *vs.* Reed.

whether they make such a case as to authorise it to interfere by injunction.

3rd. That in cases of injunctions to stay waste no bond is necessary, unless specially directed by the court granting the injunction. This class of cases is specially exempted from the results which would, in other cases, flow from the omission to file an injunction bond. *Acts of* 1835, *ch.* 346, *sec.* 3, and 1835, *ch.* 380, *sec.* 4.

4th. That the appellate court must assume, in support of the judgment of the inferior court, that every thing was rightfully done which the record does not show to be wrong, and this court will, therefore, assume, if necessary to the validity of the order for the injunction, that the title papers referred to in the bill were with the bill before the judge. 9 *G. & J.,* 15, *State, use of Beall, vs. Harrison.*

5th. That the necessity for filing the bill and exhibits preliminary to the application for the injunction must depend on the *rules* of the court to which the application is made, and in the absence of proof to the contrary, this court will assume, that the court below did not violate, in this case, its own rules.

6th. That for the purpose of the argument in the present case, it is immaterial whether the exhibits were before the circuit judge or not, because all the allegations of the bill, upon this appeal, are to be taken as true.

Tuck, J., delivered the opinion of this court.

If the word "almost," in connection with the charge of irreparable damage, had not been used, we suppose that all objection to the frame of the bill would have been waived. Equity does not require a set form of words in cases of this kind. It has not been decided in this State, that a bill otherwise good, would be defective, if the charge of irreparable mischief were omitted. As the court must be satisfied, from a statement of the grievances complained of, that the injury, if not restrained, would be irreparable, it would seem, that the complainant's own opinion of their consequences can have little effect on the conscience of the court. It is enough if the court can discover, from the allegation of facts, that the party is

Davis, *et al.*, *vs.* Reed.

entitled to the injunction for which he prays; and nothing can be clearer, in our opinion, than that acts are of that character, which, if persisted in, will result in the destruction of all the timber on a man's home-plantation, where wood and timber are necessary to the enjoyment of the property in that character. To be sure the money value of the timber may be ascertained, and remuneration, in many cases, made in damages at law, but will that compensate the owner for being deprived of the use of his farm in the manner in which he has been accustomed to enjoy it? The subject has been so often treated in this court, that we need only apply the doctrine as heretofore established, not, however, looking to words only, but giving the decisions effect according to the principles advanced.

Objection was also made, on the ground, that the bill was not filed until after the injunction had been ordered; but this ought not to operate a reversal of the order. It was, at most, a mere irregularity. It is not uncommon, in some of the counties, to proceed in this way. In the Court of Chancery there was a rule prohibiting such a practice; but we are not advised that any such exists in the court where this order was passed; nor do we say, that if there were such a rule, an appeal would lie, merely because it had been disregarded by the judge. When a practice has become inveterate it is better to adhere to it, until changed by a prospective rule, than to incur the risk of doing injustice to a party who may have followed it, and especially where the opposite side has not been injured by the alleged irregularity.

*Order affirmed with Costs.*

(Decided July 15th, 1859.)