Robert D. SPICKLER et al.

v.

KEY BANK OF SOUTHERN
MAINE et al.

Supreme Judicial Court of Maine.

Argued Nov. 20, 1992.

Decided Dec. 18, 1992.

Robert D. Spickler, pro se (orally).

Paul Macri (orally), Berman & Simmons, Lewiston, for defendants.

Before WATHEN, C.J., and ROBERTS and CLIFFORD, JJ., and WERNICK, A.R.J.

ROBERTS, Justice.

Plaintiffs Robert D. Spickler and Olive S. Spickler appeal, and defendants Key Bank of Southern Maine and its agent, Richard E. Lucas cross-appeal, from a judgment entered in the Superior Court (Cumberland County, *Brennan, J.*). In addition, the Spicklers appeal from an order enjoining them from bringing meritless lawsuits based on the facts of the case at bar. Although we modify the judgment with respect to the personal liability of Richard Lucas, we affirm in all other respects.

### I.

The Spicklers are real estate developers who sought to develop several pieces of property during the 1970s and early 1980s. Due to a number of factors their projects failed, and by mid–1979 they had defaulted on their line of credit with Depositors Trust Company, Key Bank's predecessor. Although the debt was primarily the obligation of R.D. Realty, the Spicklers' corporation, it was also guaranteed by them personally as well as by their other corporation, Chambers Point, Inc.

The Spicklers purchased an oceanfront parcel at Roque Bluffs in Washington County in an effort to develop a 65–lot subdivision. Unfortunately, they had no legal right of access to the property, and electricity was over two miles away. In an attempt to sell the property, the Spicklers tried to auction 63 of the lots. To induce sales, they agreed to escrow 10% of the purchase price, which would not be paid to Chambers Point until the Spicklers certified that a road and electricity had been brought to the property. Immediately after the auction the neighbors successfully sued, claiming that there was no right of access over their land.

Another project at issue in this suit is the Spicklers' Parkers Head development on

the Kennebec River in Phippsburg. Despite their efforts, only one parcel, Lot 26 owned solely by Olive Spickler, was ever developed. The Spicklers again became involved in litigation when Roger Dube sued for foreclosure on his purchase money mortgage on the Parkers Head property. The court ordered foreclosure of the mortgage, and the Bank's security evaporated because its interest was subordinate to the Dube mortgage, which exceeded the value of the property. As a result of their dealings with Dube, the Spicklers obtained a judgment against him for a real estate commission.

The Spicklers then arranged with the Bank to compromise their debt. The Bank agreed to dispose of certain assets, including Lot 26 and the Spicklers' home, and accept the amount recovered, up to $235,000, in full satisfaction of the debt. The Bank received approximately $195,000 from the disposition of the assets.

The Spicklers commenced this action in a three-count complaint filed in March 1985. Count I alleged misappropriation of the Chambers Point escrow account. Count II, brought by Olive Spickler alone, alleged breach of an oral contract to dispose of Lot 26 by public auction. Count III alleged that the defendants negligently failed to collect the Dube judgment that the Spicklers had assigned to them. Although the Spicklers moved to amend and supplement the complaint numerous times with varying degrees of success, these are essentially the claims that were submitted to the jury.

The jury returned a verdict for the defendants on the Dube claim and the Lot 26 claims, and for the Spicklers on the Chambers Point escrow claim. It awarded the Spicklers damages of $4,420. The court also granted the defendants' motion for a permanent injunction enjoining the Spicklers from bringing frivolous lawsuits based on the facts of this suit. This appeal and cross-appeal followed.

## II.

### The Appeal

The Spicklers argue that the court erred in denying their motion to file a second supplemental complaint pursuant to M.R.Civ.P. 15(d). They contend that the court was inconsistent in granting their motion to file a first supplemental complaint that permitted Spickler to assert the claims assigned to him by Chambers Point, but denying their motion to file a second supplemental complaint that would have permitted him to assert the claims assigned to him by R.D. Realty.

■ Unless the adverse party can demonstrate that his position will be prejudiced by the allowance of a supplemental pleading, the court will ordinarily grant the motion. *Rancourt v. City of Bangor,* 400 A.2d 354, 356 (Me.1979). We review the denial of a motion to file a supplemental pleading, however, only for an abuse of discretion. *Id.* at 357. Unlike the first supplemental complaint, which merely reasserted personally those claims of Chambers Point contained in Count I of the original and first amended complaints, the second supplemental complaint contained three new claims, for which additional discovery would be required. We conclude, therefore, that the court acted within its discretion in denying the motion.

■ The Spicklers also argue that the court erred in refusing to give their proposed jury instruction # 8, which stated:

You must decide whether the bank used its best efforts to realize the highest possible recovery for the assets conveyed by the Spicklers pursuant to the May 20th, 1983 letter.

There is no error in a trial court's refusal to give a proposed jury instruction that contains an inaccurate statement of the law. Because the Bank was under no obligation to obtain the "highest possible recovery" for the assets, the court's refusal to give the instruction was not error.

As evidence of consequential damages on the Chambers Point escrow claim, Spickler made an offer of proof that the Bank's failure to release $1,000 from the escrow account prevented him from purchasing real estate from which he would have real-

ized a profit of approximately $150,000. The court did not allow Spickler to present such evidence on the ground that in pretrial proceedings he had not disclosed that particular claim for consequential damages. In any event, the offer of proof established that the claim for lost profits was too speculative to support an award of damages.

■ During the jury's deliberations, it was discovered that a juror had discussed the case with a friend. The court, acknowledging the seriousness of the situation, explored several options with the parties, including proceeding with seven jurors or ordering a mistrial. Although they initially requested a mistrial, the Spicklers ultimately agreed to proceed with seven jurors. They now argue that the court erred in not ordering a mistrial. We disagree. Because the Spicklers agreed to proceed with seven jurors, they waived any claim of error. *See New England Whitewater Center, Inc. v. Department of Inland Fisheries & Wildlife*, 550 A.2d 56, 59 n. 5 (Me. 1988).

■ The Spicklers argue that the court erred in denying Spickler's post-verdict motion to allow punitive damages. "An award of punitive damages is justified where the plaintiff proves by clear and convincing evidence that the defendant acted with malice." *Boivin v. Jones & Vining, Inc.*, 578 A.2d 187, 189 (Me.1990) (citing *Tuttle v. Raymond*, 494 A.2d 1353, 1354 (Me.1985)). In his memorandum Spickler stated that "[p]unitive damages are recoverable for wanton reckless disregard for plaintiff's rights." This, however, is precisely the standard we rejected in *Tuttle. See Tuttle*, 494 A.2d at 1360–61. Because Spickler relied on a plainly incorrect statement of the law regarding the recovery of punitive damages, the court did not err in denying his motion.

During the trial there was a confrontation between Spickler and the defendants' attorney, during which the Spicklers allege that the attorney physically interfered with Spickler's conference with a witness. After hearing both versions of what had transpired, the court declined to sanction the attorney, and instead ordered a court officer to be present in the courtroom and in the corridor until the end of the trial. The Spicklers argue that the court erred in failing to sanction the attorney. We conclude, however, that the court acted well within its discretion in not imposing sanctions on the attorney. *Cf. Green v. Nemat*, 499 A.2d 470, 471–72 (Me.1985) (trial court has broad discretion in imposing sanctions for discovery violations).

■ The Spicklers argue that the court abused its discretion in granting the defendants' motion for a permanent injunction against them because it impermissibly restricts their access to the courts. It is well-settled that a court may enjoin a party from filing frivolous and vexatious lawsuits. *See, e.g., Gordon v. Department of Justice*, 558 F.2d 618 (1st Cir.1977); *Clinton v. United States*, 297 F.2d 899, 902 (9th Cir.1961); *Liedtke v. Fillenworth*, 372 N.W.2d 50, 52 (Minn.App.1985). The party seeking the injunction, however, must make a detailed showing of a pattern of abusive and frivolous litigation. *Castro v. United States*, 775 F.2d 399, 408–09 (1st Cir.1985); *Whatcom County v. Kane*, 31 Wash.App. 250, 640 P.2d 1075, 1077 (1981). The court must be careful not to issue a more comprehensive injunction than is necessary. *Id.*

■ In reaching its decision on this issue, the court judicially noticed a number of lawsuits involving the Spicklers and their corporations. After a review of those cases, the court specifically found that "[h]istory suggests that the Spicklers will continue to sue individuals involved in this litigation unless the injunction issues" and that "intentions to file such a suit have already been voiced."

The court's injunction does not bar the Spicklers from bringing meritorious claims based on these matters. Rather, it establishes a screening mechanism whereby any future complaints by the Spicklers will be examined to protect the defendants and their agents from baseless claims. Because there is ample evidence in the record to support the trial court's factual determinations, and because the injunction sweeps no broader than necessary to protect the defendants from frivolous litigation, the

grant of the injunction was not an abuse of discretion.

The Spicklers' remaining issues are without merit and require no discussion.

### III.

### *The Cross–Appeal*

■ The only issue we need address on the defendants' cross-appeal is their argument that the court erred in denying their motion for judgment notwithstanding the verdict with respect to the Spickler's recovery on the Chambers Point escrow count. When reviewing the denial of a motion for judgment notwithstanding the verdict, the Law Court examines the evidence in the light most favorable to the appellee and determines whether any reasonable view of the evidence, including all justifiable inferences drawn therefrom, can sustain the verdict. *Schiavi v. Goodwin*, 542 A.2d 367, 368 (Me.1988); *Buchanan v. Martin Marietta Corp.*, 494 A.2d 677, 678 (Me.1985). The burden is on the moving party to show that the adverse verdict is " 'clearly and manifestly wrong.' " *Schiavi*, 542 A.2d at 368 (quoting *Bowie v. Landry*, 150 Me. 239, 241, 108 A.2d 314, 315 (1954)).

■ The verdict form submitted to the jury on the Chambers Point escrow claim presented contractual and tort theories of recovery. Although the jury found the defendants to be liable in both contract and tort, it awarded damages only for the breach of contract. Because defendant Lucas was an agent with a disclosed principal, however, he cannot be held liable for breach of contract. *See McKeen v. Boothby*, 129 Me. 324, 326, 152 A. 53, 54 (1930). Thus, no reasonable view of the evidence can sustain a finding that Lucas is liable for contract damages.

The entry is:

Judgment modified to delete the personal liability of defendant Richard E. Lucas, and as so modified, affirmed.

All concurring.