985 A.2d 622

**James RIFFIN**

v.

**CIRCUIT COURT FOR BALTIMORE COUNTY, et al.**

**No. 2939, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Jan. 5, 2010.

12 

James Riffin, Pro Se.

Paul M. Mayhew, Adam M. Rosenblatt, John E. Beverungen, County Atty., on brief, for Appellee.

Panel: DAVIS, ZARNOCH, SHARER, J. FREDERICK (Retired, Specially Assigned) JJ.

ZARNOCH, J.

These consolidated cases raise the important question of whether due process requires notice and an opportunity to be heard before a court declares a person to be a "frivolous" or "vexatious" litigant, who must seek leave from the administrative judge before filing "any pleadings." In this appeal, James Riffin, appellant, contends that the Circuit Court for Baltimore County failed to afford him due process before issuing

such an order. Appellees [1] argue that the order is not presently appealable, and, alternatively, that the ruling was justified under the circumstances. We conclude that this pre-filing order was a *sua sponte* injunction authorized by Md. Rule 15–602(b) and thus, appealable under Md.Code (1973, 2006 Repl. Vol.), Courts and Judicial Proceedings (CJP) Article, § 12–303(3)(i). However, we agree with the unanimous holdings of federal and state authorities that due process requires notice to the alleged frivolous or vexatious litigant and an opportunity for him to be heard before the issuance of a pre-filing order. The question of whether such an order is warranted is for the circuit court to determine after due process has been satisfied. Therefore, we must vacate the circuit court's order and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Riffin has repeatedly and unsuccessfully sought judicial approval of his contention that he and certain entities owned by him are a "railroad" exempt from certain State and local environmental regulations. Spawning a multitude of cases before trial and appellate courts in various jurisdictions, he also has attempted to remove his litigation to federal court. After one such attempt in September 2007, the United States District Court for the District of Maryland responded with a "Memorandum Opinion," explaining the reasons why removal was improper, and then stating:

> Riffin has made numerous attempts to disrupt valid state proceedings by filing civil rights complaints seeking injunctive relief against Baltimore County and by removing proceedings to this Court, forcing state proceedings to a grinding halt. Riffin's use of federal litigation to stonewall efforts by local authorities to enforce state law is abusive and this Court declines to facilitate those efforts any fur-

---

1. The appellees named by Riffin are Baltimore County, the Board of Appeals of Baltimore County, Raymond S. Wisnom Jr., and the Mayor and City Council of Baltimore City. Only the County parties have filed a brief.

ther. "[F]ederal courts have the power and the obligation to protect themselves from abusive filing of frivolous and repetitive claims." *McMahon v. F.M. Bank–Winchester,* 45 F.3d 426 (4th Cir.1994) (unpublished) (per curiam), *cf. Procup v. Strickland,* 792 F.2d 1069, 1070–71 (11th Cir.1986) (en banc). Before Riffin will be permitted to file another *pro se* civil action in this Court he will be required to seek leave to do so. In so doing, Riffin will be required to state succinctly how the original complaint or removed case differs from other actions filed and dismissed or remanded by this Court. In the event the claim is accepted for filing and it is revealed that Riffin misrepresented the nature of the proceedings, he will be required to show cause why he should not be subject to sanctions.

*Baltimore County, Maryland v. James Riffin,* Civil Action No. RDB–07–2301 (D.Md. Oct. 4, 2007) (footnote omitted).[2]

Apparently buckling under the weight of Riffin's filings, the Baltimore County Attorney's Office learned of the federal ruling and decided to take action. On January 28, 2009, County Attorney John E. Beverungen wrote to The Hon. Peter B. Krauser, Chief Judge, Court of Special Appeals, and The Hon. John G. Turnbull, II, Chief Judge, Circuit Court for Baltimore County, with a "cc" to James Riffin.[3] The letter stated:

> I wish to bring to your attention a situation that has, frankly, gotten out of hand.... James Riffin[ ] owns a warehouse in northern Baltimore County that abuts Beaver Dam Run, a stream that flows into Loch Raven reservoir. For the last five years, State and County officials have been trying to get Mr. Riffin to comply with various zoning and environmental laws. He has contemptuously resisted all such attempts on the grounds that he is purportedly running a railroad on the property and is, therefore, allegedly exempt from State and Local law. However, this preemp-

---

2. These conclusions were embodied in an order filed the same day.

3. A certificate of service was not attached.

tion argument has been squarely rejected by the United States District Court for the District of Maryland (Bennett, J.), and that ruling was affirmed by the Fourth Circuit Court of Appeals. Yet these adverse rulings have not kept Mr. Riffin from filing over 100 pleadings, motions, and appellate briefs in your courts over the past several years, each one more frivolous than the last.

After detailing five years of Riffin's litigation efforts, the letter went on to note:

While this brief history provides an overview of some of the major events that have occurred over the last four years, it does not come close to explaining the amount of time that the Baltimore County Office of Law has spent responding to Mr. Riffin's pleadings. Mr. Riffin has already been declared a frivolous litigant in Federal District Court.... However, rather than stemming the flow of frivolous pleadings, this has merely caused Riffin to file more papers in the state courts. As I am sure you will understand, the Baltimore County Office of Law does not have the time or manpower to continue to respond to Mr. Riffin's frivolous pleadings. As such, I would respectfully request that you too declare Mr. Riffin a "frivolous litigant" and refuse to accept any further court filings without prior judicial approval.

In response to the County's request, Chief Judge Turnbull issued a "Memorandum Opinion" dated February 3, 2009. The opinion, which contained no docket number, but was captioned "*In Re: James Riffin* ", said:

As Chief Administrative Judge of the Circuit Court for Baltimore County, it has come to my attention that James Riffin is a party to thirteen (13) open cases before the Court. All of these cases arise out of the same legal controversy; to wit, whether he, as an alleged railroad operation, is exempt from State and local environmental regulations. After reviewing the numerous previously decided cases involving Mr. Riffin and state and local authorities, it is clear that the legal controversy underlying this

dispute has already been decided against Mr. Riffin in administrative, State and Federal Courts. However, Mr. Riffin continues to file frivolous and vexatious litigation against Baltimore County and various County officials, including the Assistant County Attorneys working on these cases, for the purpose of avoiding or forestalling the legal rulings that this and other courts have made against him. It appears that the volume of papers that Mr. Riffin has filed in this Court has increased since he was declared a frivolous litigant by Judge Richard Bennett and barred from filing any further papers in the United States District Court without first obtaining leave of Court. . . .

The opinion then noted:

Courts have the power and the obligation to protect themselves from abusive filing of frivolous and repetitive claims. *See* Maryland Rule 1–341. While an argument for the payment of attorney's fees could already be made in this case, the Court will reserve on this issue and instead hold that Mr. Riffin is hereby declared a frivolous litigant. Accordingly, before Mr. Riffin will be permitted to file any further pleadings or civil actions in this Court, he will be required to seek leave to do so from the Administrative Judge or acting Administrative Judge of this Court. Mr. Riffin will be required to state succinctly how the original complaint or subsequent pleading differs from other actions filed and adjudicated by this Court. No pleading will be accepted for filing by Mr. Riffin, or on Mr. Riffin's behalf, until he obtains prior approval from the Court. In the event that Mr. Riffin does obtain such approval, and it is revealed that he misrepresented the nature of the proceedings, he will be required to show cause why he should not be subject to further sanctions. . . .

The memorandum opinion was accompanied by an order that stated in pertinent part:

For the reasons stated in the foregoing Memorandum Opinion, it is . . . hereby ORDERED that:

1. James Riffin is hereby declared a frivolous litigant.

2. The Clerk SHALL NOT ACCEPT FOR FILING any pleadings filed by James Riffin, or filed on his behalf, unless he has first obtained leave of this Court to do so from the Administrative Judge o[r] acting Administrative Judge of this Court.

Although neither the February 3 opinion nor the order noted specific cases, the circuit court, the following day, entered both the opinion and order in six pending actions.[4]

In a letter dated February 3, 2009, and addressed to Chief Judge Turnbull, Chief Judge Krauser, and Chief Judge Robert Bell of the Court of Appeals, appellant stated that he had received Baltimore County's letter on February 2, 2009, and that he requested the "return [of] Mr. Beverungen's letter" because it constituted an improper ex parte communication. Alternatively, appellant "ask[ed] for [l]eave of the [c]ourts to reply to [the] [l]etter." A certificate of service dated February 3, 2009, was attached to the letter.[5] A 17–page document entitled "James Riffin's Answer to Mr. Beverungen's Letter" accompanied this letter, and argued that appellant was not a frivolous or vexatious litigant. This document bore a certificate of service dated February 3, 2009.[6] An envelope postmarked February 4, 2009 was stapled to the letter and answer. Noted in blue ink in the bottom right hand corner of the envelope was "2/5/09." These documents, which were not date-stamped or docketed, are located in the record of Case Number 03–C–09–000064.

---

4. Specifically, the circuit court entered the orders in case files 03–C–07–013308; 03–C07–013983; 03–C–08–000551; 03–C–08–008110; 03–C–09–000064; 03–C–08–011104.

5. The signed certificate reported service on February 3, 2009 by hand delivery to the County Attorney.

6. The signed certificate of service stated: "I HEREBY CERTIFY, that on this 3rd day of February, 2009, a copy of the foregoing James Riffin's Answer to Mr. Beverungen's Letter, was hand delivered to the Baltimore County Office of Law, 2d floor, Old Court House Building, Towson, Maryland, attention John Beverungen, Attorney for Baltimore County."

Appellant sent another letter dated February 7, 2009, to Chief Judge Bell and Chief Judge Krauser, with a copy to Chief Judge Turnbull. An envelope with an unreadable postmark was stapled to the letter. The letter stated in pertinent part:

1. Late afternoon on February 2, 2009, I received a copy of a letter dated January 28, 2009, postmarked January 29, 2009, which was prepared by John E. Beverungen, Baltimore County Attorney....

2. On February 3, 2009, before I could complete, then mail, on February 3, 2009, my response to Mr. Beverungen's letter, Judge Turnbull, without providing me any opportunity to respond to Mr. Beverungen's letter, signed an Order, declaring me to be a frivolous litigant, and barring me from filing any further pleadings in the Baltimore County Circuit Court.

3. On Friday, February 6, 2009, I received a letter postmarked February 5, 2009, which contained a copy of Judge Turnbull's Order....

\* \* \*

5. On Friday, February 6, 2009, I went to the Circuit Court for the purpose of obtaining a print out showing all the suits I have been involved in, and the current disposition of those cases. I arrived at the court house at 3:45 p.m. After I went through the security check, I was informed I had been denied access to the court house. Upon further inquiry, I was told Judge Turnbull had issued an Order barring me from the courthouse.

\* \* \*

If Baltimore County or Judge Turnbull still desired to have me declared a "frivolous litigant," Baltimore County could formally file a motion for sanctions, specifying the particular pleading(s) and particular proceedings(s) it felt were unsupported by "good grounds." Judge Turnbull could then schedule a Show Cause Hearing, wherein Baltimore County could argue its case, and I would be afforded an opportunity to refute Baltimore County's

allegations. Following this procedure would at least comply with the basic tenets of Due Process.

(Emphasis omitted). Appellant then proceeded to argue that he was not a frivolous or vexatious litigant. Attached to this letter was a certificate of service dated February 9, 2009.[7] This letter, which was not date-stamped or docketed, is located in the record of Case Number 03–C–09–000064.

On February 27, 2009, Riffin filed a notice of appeal from the February 3, 2009 order, referring to each of the six docketed actions. *See* n. 4, *supra.* On April 17, 2009, this Court consolidated the appeals and captioned the case, *James Riffin v. Circuit Court for Baltimore County, et al.*

## QUESTIONS PRESENTED[8]

I. Was the circuit court authorized to issue the order? [9]

II. Is the order appealable?

III. Did the circuit court afford appellant adequate due process before issuing the order?

---

**7.** The signed certificate asserted service by mail on February 9, 2009, on Chief Judges Bell, Krauser and Turnbull and the County Attorney.

**8.** Appellant has presented the following questions in his brief:
. Was Appellant denied his Due Process Rights when [the circuit court], in response to a letter, declared Appellant to be a frivolous litigant, then imposed sanctions upon the Appellant, without providing the Appellant an opportunity to be heard?
. Does Appellant's defense invoking the preemptive reach of 49 U.S.C. 10501(b), present a "colorable claim?"
(emphasis omitted). Appellees have framed these issues:
1. Whether the circuit court's decision to declare Mr. Riffin a frivolous litigant is a final order subject to appeal[.]
2. Whether the circuit court erred in declaring Mr. Riffin a frivolous litigant who is barred from filing any further pleadings without first seeking leave of court to do so[.]
In light of our disposition of the questions presented as we perceive them, we need not reach the second question of either party.

**9.** Although Riffin does not appear to have specifically raised the question of the circuit court's authority to issue a pre-filing order, the question is so entwined with both the appealability and due process issues that we believe it must be addressed.

## DISCUSSION

### I. Authority of the Circuit Court to Issue the Order

#### A. Md. Rule 1–341

We are not aware of a Maryland case that addresses a circuit court's authority to issue a pre-filing order. When issuing the order here, the circuit court cited Maryland Rule 1–341, which provides:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

Rule 1–341's plain language does not appear to provide the court with the power to issue a pre-filing order, particularly a "global" ruling not tied to a single "proceeding" and triggered by a letter to the administrative judge, rather than by a complaint or motion. Even if Rule 1–341 authorized the order, the court did not make an explicit evidentiary finding of bad faith or lack of substantial justification as required by Rule 1–341. *See, e.g., Johnson v. Baker,* 84 Md.App. 521, 528–29, 581 A.2d 48 (1990).

#### B. State Caselaw—No Need for Statutory Authority

There is no Maryland statute expressly providing the circuit court with the power to issue a pre-filing order.[10] However, courts in other states have found such a power to exist even absent express statutory authority. *See DeNardo v. Cutler,* 167 P.3d 674, 680–81 (Alaska 2007) (citing 42 Am.Jur.2d

---

**10.** At least six states have statutes that seem to address situations similar to this case. Cal.Civ.Proc.Code § 391 (2008); Del.Code Ann. tit. 10, § 8803(c) (2009); Fla. Stat. § 68.093 (2008); Haw.Rev.Stat. § 634J (2008); Ohio Rev.Code Ann. § 2323.52 (2008); Tex. Civ. Prac. & Rem.Code Ann. § 11.054 (2009).

*Injunctions* § 191, and federal and state law); *Eismann v. Miller*, 101 Idaho 692, 619 P.2d 1145, 1149–50 (1980) (relying on state constitutional provisions); *Bowman v. Lake County Pub. Bldg. Comm.*, 31 Ill.2d 575, 203 N.E.2d 129, 131 (1964) (citing sections addressing injunctions in American Jurisprudence and Corpus Juris Secundum); *Town of Brookline v. Goldstein*, 388 Mass. 443, 447 N.E.2d 641, 645 n. 6 (1983) (failing to reveal the origin of its authority); *Rines v. Clerk of Cts.*, 332 Mass. 527, 126 N.E.2d 124, 127 (1955); *Petition of Thorndike*, 257 Mass. 409, 153 N.E. 888, 889 (1926); *Spickler v. Key Bank of S. Me.*, 618 A.2d 204, 207–08 (Me.1992) (relying on federal and state cases); *State v. Smith*, 2002 ML 2810, 37–39 (Mont.Dist.Ct.2002) (citing federal cases); *Jordan v. State of Nevada on Relation of the Dept. of Motor Vehicles and Pub. Safety*, 121 Nev. 44, 110 P.3d 30, 41–46 (2005) (relying on a state constitutional provision similar to the federal All Writs Act, 28 U.S.C. § 1651(a)), *overruled on other grounds by Buzz Stew LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev.2008); *Spremo v. Babchik*, 155 Misc.2d 796, 589 N.Y.S.2d 1019, 1020 (N.Y.Sup.Ct.1992) (citing federal and out of state authority); *Fed. Land Bank v. Ziebarth*, 520 N.W.2d 51, 55–59 (N.D.1994) (relying in part on "the court's inherent power to control its docket and to protect its jurisdiction and judgments, the integrity of the court, and the orderly and expeditious administration of justice"); *Tilli v. Capobianco*, 502 Pa. 447, 466 A.2d 1334, 1335 (1983) (relying on common law and federal case law); *Minniecheske v. Griesbach*, 161 Wis.2d 743, 468 N.W.2d 760, 762–63 (1991) (relying on federal cases).

### C. Common Law Authority

Another possible source of authority for state courts to issue orders curbing frivolous and vexatious litigants is the common law. In *Tilli*, 466 A.2d at 1335, the Pennsylvania Supreme Court stated: "Enjoin[ing] repeated frivolous actions by 'pertinacious litigants'... [was] known to common law...." *See also* Robin Miller, Annotated, *Validity, Construction, and Application of State Vexatious Litigant Statutes*, 45 A.L.R.6th 493 (2009). ("A cause of action for vexatious litigation may

also exist ... at common law...."). *But see* Part I. F, *infra* (indicating that a court's authority to issue an injunction *sua sponte* was not authorized by the common law).

## D. Equitable Powers

Alternatively, numerous courts have recognized that equity allows courts to issue pre-filing orders in the form of injunctions. *See, e.g., Bridgeport Hydraulic Co. v. Pearson,* 139 Conn. 186, 91 A.2d 778, 781 (1952); *Sylvester Coal Co. v. St. Louis,* 130 Mo. 323, 32 S.W. 649, 650–51 (1895); *Shevalier v. Stephenson,* 92 Neb. 675, 139 N.W. 233, 234–35 (1912); *John Hancock Mut. Life Ins. Co. v. Fiorilla,* 83 N.J.Super. 151, 199 A.2d 65, 66 (1964); *Ramantanin v. Poulos,* 240 S.C. 13, 124 S.E.2d 611, 617 (1962). According to 42 Am.Jur.2d *Injunctions* § 191 (2008):

> Although litigiousness alone will not support an injunction restricting a plaintiff's filing activities, the courts have the authority to enjoin persons engaged in the manifest abuse of the judicial process, regardless of whether the threatened litigation is legal or equitable in character, or whether the vexatious litigation results from the prosecution of many suits by the same individual, or from many suits by different individuals. The courts may take creative actions to discourage hyperactive litigators so long as some access to courts is allowed, such as by limiting the amount of filings a litigant may make, and prescribing conditions precedent to those filings so as to determine the propriety of a suit on a case by case basis.

*See also* 16B Am.Jur.2d *Constitutional Law* § 620 (2008) ("[W]hen a litigant is abusing the judicial process by 'hagriding' individuals solely out of ill will or spite, a court of equity may enjoin such vexatious litigation.")

One federal court has attempted to trace the history of an equity court's powers in this area:

> [I]t has long been settled that a court of equity may enjoin the institution of repetitious and baseless litigation. The ancient bill of peace had this as one of its purposes. See 1

Pomeroy, Equity Jurisprudence 246, 261j (5th ed.1941); Stafford, Equity 414 (1934). As early as 1709, the English court acted to grant an injunction against the commencement of suits contesting matters which had been settled in previous litigation. Earl of *Bath v. Sherwin,* 4 Brown's Parl.Cas. 373 (1709). In more recent times, this power was affirmed, and perhaps extended, in England by the Vexatious Actions Act, 59 & 60 Vict. c. 51, which authorized the High Court to enjoin the bringing of further actions by "any person (who) has habitually and persistently instituted vexatious legal proceedings without any reasonable ground * * * "

The English Courts have not hesitated to exercise the power thus vested in them by restraining what Professor Chafee refers to as "pertinacious litigants" from abusing the process of the courts by the repeated institution of frivolous litigation. Chafee, Cases on Equitable Remedies 222 (1938). Professor Chafee refers to a number of cases in which the English courts and other courts of the British Commonwealth have exercised this power. . . .

The courts of the United States have also acted to enjoin a litigant from subjecting another to repeated, baseless and vexatious suits on the same subject matter, recognizing without question that such a course of conduct is a sufficient ground for the issuance of an injunction. The action which I propose to take also finds support in a line of cases in this Commonwealth [of Massachusetts] which assert the power of a court, not only to protect an individual litigant from harassment, but to protect its own records from irrelevant, unimportant and superfluous papers.

In my view, the authorities and principles to which reference has been made leave little doubt as to the power of this Court to protect these litigants from repeated and purely vexatious suits, and to protect itself from unwarranted and patently frivolous impositions upon its jurisdiction.

*Rudnicki v. McCormack,* 210 F.Supp. 905, 909–10 (D.R.I.1962) (some citations omitted).

## E. The Authority of Federal Courts

Most federal courts have identified the All Writs Act, 28 U.S.C. § 1651(a), as the source of their power to issue pre-filing orders. *See, e.g., Mayfield v. Klevenhagen,* 941 F.2d 346, 348 (5th Cir.1991); *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1057 (9th Cir.2007); *Tripati v. Beaman,* 878 F.2d 351, 352 (10th Cir.1989); *see also Procup v. Strickland,* 792 F.2d 1069, 1073 (11th Cir.1986) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.").

The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." "[F]ederal courts are courts of limited jurisdiction," and the All Writs Act provides federal courts "with the procedural tools—the various historic common-law writs—necessary for them to exercise their limited jurisdiction." *United States v. New York Telephone Co.,* 434 U.S. 159, 187, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977).

The "writ" most commonly identified by federal courts in cases involving pre-filing orders, particularly those involving their issuance *sua sponte,* is the injunction. *See, e.g., Martin–Trigona v. Lavien,* 737 F.2d 1254, 1261–62 (2d Cir.1984); *Cromer v. Kraft Foods, Inc.,* 390 F.3d 812, 817 (4th Cir.2004); *Baum v. Blue Moon Ventures, LLC,* 513 F.3d 181, 188–89 (5th Cir.2008); *In re Pointer,* 345 Fed.Appx. 204, 2009 U.S.App. LEXIS 18851, at *2 (8th Cir. Aug. 19, 2009). Specifically, the Third Circuit has said: "As appellant filed no documents for adjudication prior to the issuance of the district court's *sua sponte* order, the [pre-filing] order is most aptly considered as an injunction...." *In re Oliver,* 682 F.2d 443, 445 (3d Cir. 1982).[11]

---

11. In the case of pre-filing orders, the federal cases do not apply the usual injunction prerequisites. *See Martin–Trigona,* 737 F.2d at 1262 ("[T]he traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of an

## F. The Authority of Maryland Courts

A Maryland court has all the powers of the common law unless altered by statute. *See* Article 5 of the Maryland Declaration of Rights. In addition, we have recognized that our courts have certain inherent powers to deal with vexatious litigants. *See Needle v. White, Mindel, Clarke & Hill,* 81 Md.App. 463, 474, 568 A.2d 856 (1990) ("conced[ing] that a trial court has inherent power to impose sanctions for continuing an action vexatiously, wantonly, or for oppressive rea-. sons"). Most significantly, a Maryland court has the express power to issue an injunction *sua sponte.*[12]

Maryland Rule 15–502(b) provides, "Subject to the rules in this Chapter, the court, at any stage of an action and at the instance of any party or *on its own initiative,* may grant an injunction upon the terms and conditions justice may require." (Emphasis added.) The committee note to Rule 15–502 states that "[t]his Rule is derived from former Rules BB71, 76, 77, 78, and 79." Former Rule BB77 stated:

Although an injunction may not have been prayed, pursuant to section a 4 of Rule 370 (Bill of Complaint—Petition), the court may at any stage of an action, on application of any party thereto, or party in interest, by petition, or of its own motion, grant an injunction, subject to the provisions of this Subtitle, and upon such other terms and conditions as justice may require.

Its source was the now-repealed Md.Code (1957) Art. 16, § 89. This statute provided:

The court may at any stage of a cause or matter, on the application of any party thereto, or party in interest, by motion or petition, or of its own motion, order the issue of a

---

injunction against a vexatious litigant."); *see also Baum,* 513 F.3d at 189.

12. Unlike a federal court, which has the implied power to issue such injunctions under the All Writs Act, Maryland courts have express authority under the Maryland Rules, without a need for any additional statutory authority. *Cf. In re Petition for Writ of Prohibition,* 312 Md. 280, 302 n. 13, 539 A.2d 664 (1988).

mandate (affirmative injunction) or injunction, directing and commanding any party to such cause or matter, or any party properly brought before it under the existing practice, to do, or abstain from doing, any act or acts, whether conjointly or in the alternative, whether in the nature of specific performance or otherwise named in such mandate or injunction, and may make such terms and conditions (as to security, & c.,) as to it may seem fit, preliminary to the granting of such mandate or injunction.

It was enacted in 1886. *See* ch. 441, § 1 of the Acts of 1886. Before 1886, "The general rule [was] that injunctions [could be] issue[d] only on bill filed, and with a proper prayer therefor; it was no doubt originally so in England, for it was one of the articles of impeachment against Cardinal Wolsey, as chancellor, that he had granted injunctions without bill put in." Charles Fisk Beach, Jr., *Modern Equity: Commentaries on the Law of Injunctions as Determined by the Courts and Statutes of England and the United States* § 140 (1895) (footnote omitted). Nevertheless, "the practice of granting injunctions before the filing of the bill [was] quite common in the counties of Maryland, though there was a rule prohibiting such a practice in the Maryland chancery; the omission so to file [was] deemed a mere irregularity for which the order ought not to be reversed." *Id.* (footnote omitted) (citing *Davis v. Reed*, 14 Md. 152, 157 (1859)).[13] This practice appears to have carried over from Maryland's provincial

---

**13.** In *Davis*, the Court of Appeals said:

Objection was also made, on the ground, that the bill was not filed until after the injunction had been ordered; but this ought not to operate a reversal of the order. It was, at most, a mere irregularity. It is not uncommon, in some of the counties, to proceed in this way. In the Court of Chancery there was a rule prohibiting such a practice; but we are not advised that any such exists in the court where this order was passed; nor do we say, that if there were such a rule, an appeal would lie, merely because it had been disregarded by the judge. When a practice has become inveterate it is better to adhere to it, until changed by a prospective rule, than to incur the risk of doing injustice to a party who may have followed it, and especially where the opposite side has not been injured by the alleged irregularity. 14 Md. at 157.

courts. Beach, *supra*, at § 143. ("[W]hile Maryland was a province an injunction could be obtained on an affidavit stating the facts of the case, before the filing of the bill."). Thus, the General Assembly's enactment of ch. 441 in 1886 could be read as a legislative decision to abandon the English rule and expressly recognize the common practice in Maryland of issuing injunctions absent a bill filed. Nevertheless, by 1895, Beach noted, "In Maryland it is said that the only mode of obtaining an injunction is by a bill; but by the Laws of 1886, ch. 441, it is enacted that at any stage of a cause, or matter, the court may on its own motion or 'the motion or petition' of a party, issue an injunction." *Id.* § 128 (footnote omitted). In any event, current law allows the court to issue an injunction on its own motion.

■ This statute, which, over the years, has been transformed into Md. Rule 15–502(b), is clear authority for a Maryland court to issue a pre-filing order [14] without the neces-

---

14. Proper exercise of the authority to address the actions of a vexatious litigant is not defeated by Article 19 of the Maryland Declaration of Rights, which provides "[t]hat every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land." We recognize that "[f]ree access to the courts is an important and valuable aspect of an effective system of jurisprudence, and a party possessing a *colorable* claim must be allowed to assert it without fear of suffering a penalty more severe than that typically imposed on defeated parties." *Dent v. Simmons*, 61 Md.App. 122, 124, 485 A.2d 270 (1985) (citation and quotation omitted) (emphasis in original). However, a litigant's interest in accessing the courts is neither supreme nor absolute. In fact, authority from other jurisdictions indicates otherwise. *See, e.g., Bd. of Commrs. of Morgan Cty. v. Winslow*, 862 P.2d 921, 924 (Colo.1993) ("'[A] litigant's right of access to the courts must be balanced against and, in a proper case, must yield to the interests of other litigants and of the public in general in protecting judicial resources from the deleterious impact of repetitious, baseless *pro se* litigation.'" (quoting *Bd. of County Comm'rs of Morgan County v. Winslow*, 706 P.2d 792, 794 (Colo.1985))); *Eismann*, 619 P.2d at 1150 ("[T]he ultimate injury here necessarily falls upon the people of Idaho.... [E]very individual in our society has a right of access to the courts.... However, the exercise of that right cannot be allowed to rise to the level of abuse, impeding the normal and essential functioning of the judicial process. To allow one individual ... to incessantly [engage

sity of a complaint or motion.[15] In short, a pre-filing order is a *sua sponte* injunction and, if properly issued, is a remedy available to a Maryland court to control the actions of a vexatious or frivolous litigant.

## II. Appealability

Appellees argue that the pre-filing order issued by the circuit court is not a final appealable order disposing of all claims in Riffin's numerous cases.

Although there is no Maryland case directly on point, courts in other jurisdictions are divided on the issue. Those viewing a vexatious or frivolous designation as a sanctions "order" have regarded the court's action as interlocutory and not appealable until the conclusion of the case. *See, e.g., Molski,* 500 F.3d at 1054–56; *People v. Harrison,* 92 Cal.App.4th 780, 785, n. 6, 112 Cal.Rptr.2d 91 (Cal.Ct.App.2001). Those courts that consider a pre-filing order to be an injunction take the position that such a directive is immediately appealable. *See, e.g., Oliver,* 682 F.2d at 445; *Luckett v. Panos,* 161 Cal. App.4th 77, 90, 73 Cal.Rptr.3d 745 (Cal.Ct.App.2008).

■ Like most federal courts, *see* Part I.E, *supra,* we have concluded that a *sua sponte* pre-filing order, such as that issued here, is most aptly characterized as an injunction.[16]

---

in] *pro se* litigation ... only serves to debilitate the entire system of justice."); *Minniecheske,* 468 N.W.2d at 763 ("This order is drafted narrowly enough to strike a balance among [the litigants'] access to the courts, the [defendant's] interest in res judicata, the taxpayers' right not to have frivolous litigation become an unwarranted drain on their resources and the public interest in maintaining the integrity of the judicial system."); *Smith,* 2002 ML at 37–39 (warning that the court may "employ[ ] injunctive remedies to protect the integrity of the courts").

15. We note that some cases counsel against issuing a pre-filing order *sua sponte. See Pavilonis v. King,* 626 F.2d 1075, 1079 (1st Cir.1980) ("Generally, this kind of order should not be considered absent a request by the harassed defendants."); *Oliver,* 682 F.2d at 445 n. 5; *Jordan,* 110 P.3d at 42, 44.

16. The County Attorney's letter requesting a pre-filing order was not a motion in a particular case, or a complaint in a new one. Thus, the court's order has to be regarded as a *sua sponte* action.

The order is more than a sanction in an individual case, but transcends each separate case and, in fact, would require pre-filing approval of "any" pleadings filed by Riffin.[17] Clearly, such a pre-filing order, like an injunction, prohibits "a specific act." *LOOC v. Kohli*, 347 Md. 258, 265–67, 701 A.2d 92 (1997).[18] Entertaining the appeal of the injunction in this case comports with the common denominator of the CJP § 12–303 exceptions to the final judgment rule in that "irreparable harm . . . may be done to one party if he had to await final judgment before entering an appeal." *Flower World of Am., Inc. v. Whittington*, 39 Md.App. 187, 192, 385 A.2d 85 (1978). Absent some action by appellees or the circuit court, which they are not required to take, to finally conclude one of the matters in which the order was entered, appellant would be unable to appeal the order.

■ Of course, CJP § 12–303(3)(i) allows an appeal from an injunction only where the appellant has answered. Appellant attached to his February 3, 2009 letter an answer to the County's letter. It appears as though the circuit court did not receive this document until after it issued the order. We cannot fault appellant in this regard. The circuit court issued the order five days (weekend included) after the date of the letter. In light of these facts, we conclude that Riffin has sufficiently answered, so that the injunction in this case was immediately appealable under CJP § 12–303(3)(i).

---

17. Such an order could have far-reaching effects. For example, repeated failures by Riffin to win approval for filing of a pleading could lead to dismissal for want of prosecution under Md. Rule 2–507, without the ability of the plaintiff to successfully file a motion asserting good cause to prevent dismissal. It would also seem to require judicial approval even before he could file an answer to the pre-filing injunction order or note his appeal.

18. Appellees have not argued that the pre-filing order is an administrative rather than a judicial order. Such a contention would not be persuasive in any event. *See Boyd v. Bell Atl.-Md., Inc.*, 390 Md. 60, 86, 887 A.2d 637 (2005) (holding that an order was an injunction because it prohibited specific acts when it barred class members from pursuing their claims in any other forum).

An additional ground for Riffin's appeal is that it would appear that at least one of his cases (Case No. 03–C–09–000064) has ended in a final judgment. In an order filed January 20, 2009, Riffin's petition for injunctive relief was dismissed with prejudice. A motion to revise judgment was filed on February 2, 2009, and approved for filing on February 26, 2009.

Although Riffin noted an appeal from the circuit court's pre-filing order on February 27, 2009, the circuit court denied appellant's motion to revise on March 3, 2009. On March 20, 2009, appellant moved to withdraw his motion to revise. The circuit court granted that motion that same day. Also on March 20, appellant noted an appeal "to ensure that all decisions rendered by the trial court prior to the date of filing this Notice of Appeal, are reviewed." Thus, Case Number 03–C–09–000064 ended in a final judgment, so that we can review the validity of the circuit court's pre-filing order, even if it were deemed interlocutory in his other cases.

## III. Due Process

### A. Notice and Opportunity to be Heard

Riffin contends that the circuit court failed to afford him a due process right to be heard before requiring that he seek judicial approval for the filing of any pleading.[19] Understandably, appellees have not responded to this contention.

Every appellate court that has considered the question has held that before a trial court may *sua sponte* enter a pre-filing order, due process requires that it afford the alleged vexatious litigant notice and an opportunity to be heard. *See Cok v. Family Ct. of Rhode Island,* 985 F.2d 32, 35–36 (1st Cir.1993); *Oliver,* 682 F.2d at 446; *Cromer,* 390 F.3d at 819; *Baum,* 513

---

**19.** The 14th Amendment to the U.S. Constitution provides that a State shall not "deprive any person of life, liberty, or property without due process of law." The Maryland constitutional analog, Article 24 of the Declaration of Rights provides that no person may be "deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

F.3d at 189; *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir.1990); *Tripati v. Beaman*, 878 F.2d 351, 354 (10th Cir. 1989); *Pointer*, 2009 U.S.App., LEXIS 18851, at *2–5; *De-Nardo v. Maassen*, 200 P.3d at 315; *In re. Lawsuits of Carter*, 235 Ga.App. 551, 510 S.E.2d 91, 95 (1998); *Jordan*, 110 P.3d at 42–43.[20]

■ Whether the alleged vexatious litigant's right is grounded in his property interest in his cause of action, *see Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 638, 805 A.2d 1061 (2002), or his liberty interest in his right of access to the courts, *Molski*, 500 F.3d at 1057, due process dictates that he should have been afforded notice and an opportunity to be heard before issuance of the pre-filing order.[21]

■ The above cases do not mandate that due process requires that the recipient of a proper pre-filing order receive an "in-person hearing" before issuance of the order. *See Tripati*, 878 F.2d at 354. However, the Maryland Rules of Procedure might dictate otherwise. Maryland Rule 2–311(f) provides that if a party requests a hearing on a motion, the court may not render a dispositive decision without a hearing. If this rule applied to an injunction on the court's "own motion," an in-person hearing would be required. The Maryland Rules on injunctions, which mandate a hearing on a

---

**20.** This uniform array of authority has not appeared to halt the summary issuance of pre-filing orders by trial courts. For example, after the Fourth Circuit's 2004 decision in *Cromer*, the federal appeals court has repeatedly vacated pre-filing orders that were entered by district courts without compliance with due process. *See, e.g., Scott v. Wells Fargo Home Mortgage, Inc.*, 143 Fed.Appx. 525 (4th Cir.2005); *In re Head*, 174 Fed.Appx. 167 (4th Cir.2006); *Thomas v. Fulton*, 260 Fed. Appx. 594 (4th Cir.2008); *Larrimore v. Williamson*, 288 Fed.Appx. 62 (4th Cir.2008); *Larrimore v. Hooks*, 289 Fed.Appx. 576 (4th Cir.2008); *Larrimore v. Exxon Mobil Oil Corp.*, 301 Fed.Appx. 212 (4th Cir.2008). Such a history would have undercut any reliance by the circuit court on the 2007 U.S. District Court pre-filing order aimed at Riffin.

**21.** Although Riffin has not challenged the sufficiency of his notice of the order, we note that notice *did not come from the court* through some authorized means. Rather, notice came in the form of a letter from the County Attorney that was acted on by the court within a short week of its receipt.

preliminary injunction, Md. Rule 15–505(a), and a trial on the merits of a permanent injunction, Md. Rule 15–505(b); *National Collegiate Athletic Ass'n v. Johns Hopkins Univ.*, 301 Md. 574, 580, 483 A.2d 1272 (1984), would also seem to impact a *sua sponte* pre-filing order that is tantamount to an injunction. Until these rules are clarified, we believe the safest course of action for the circuit court on remand would be to accord Riffin an in-person hearing (if he desires one) after court-generated notice.[22]

### B. Appropriate Standards

■ The many appellate cases that have determined the validity of pre-filing orders have articulated a number of factors that should be appropriately considered by trial courts. For the guidance of the circuit court on remand, we set forth those conditions. Relevant authorities indicate that the court must document a record that justifies a pre-filing order. *Cok*, 985 F.2d at 35; *De Long*, 912 F.2d at 1147; *In re Powell*, 851 F.2d 427, 431 (D.C.Cir.1988); *DeNardo*, 167 P.3d at 681; *Howard v. Sharpe*, 266 Ga. 771, 470 S.E.2d 678, 680 (1996) ("[R]estrictions on an inmate's right of access to the courts must be . . . clearly warranted by the particular circumstances of each case."). To satisfy this factor, some jurisdictions require the court to "create an adequate record for review, including a list of all the cases and documents, or an explanation of the reasons, that lead it to conclude that a restrictive

---

**22.** These rules do not affect an appellate court's ability to issue a pre-filing order with an opportunity to be heard only "on the papers." *See Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 367–70 (7th Cir.1983). Moreover, it is not clear that due process would even apply to a pre-filing order issued by a certiorari court, exercising discretionary review, such as the Court of Appeals of Maryland. The United States Supreme Court has addressed the problem of frivolous litigants by summarily directing its clerk not to accept further *in forma pauperis* petitions without the payment of the docketing fee. *See Day v. Day*, 510 U.S. 1, 114 S.Ct. 4, 126 L.Ed.2d 1 (1993); *Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992) (per curiam); *In re Sindram*, 498 U.S. 177, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991) (per curiam); *In re McDonald*, 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989).

order was needed to curb repetitive or abusive activities." *Jordan,* 110 P.3d at 43. In doing so,

> a court considering a restrictive order must use caution in reviewing filings in other cases, so as not to interfere with other judges' pending assignments. The judge issuing the restrictive order should rely only on observations obtained from cases to which he or she is assigned, and on actual rulings in other cases. Further, while a restrictive order may be warranted based solely on documents before the court in that particular case, the district court must identify those documents and explain how, by filing them, the litigant abused the court system.

*Id.* (footnotes omitted).

In addition, after composing this record, the court should make substantive findings as to the frivolous or harassing nature of the litigant's actions. *De Long,* 912 F.2d at 1148 (citing *Powell,* 851 F.2d at 431). To decide whether a litigant's filings are frivolous or harassing, courts should examine "both the number and content of the filings." *Powell,* 851 F.2d at 431. Indeed, "[t]he plaintiff's claims must not only be numerous, but also be patently without merit." *Moy,* 906 F.2d at 470.

Most importantly, in light of the far-reaching order in this case, the court must narrowly tailor a pre-filing order. *See Cromer,* 390 F.3d at 818; *Ortman v. Thomas,* 99 F.3d 807, 811 (6th Cir.1996) (holding that an order was impermissible when it completely barred a litigant from filing lawsuits); *DeNardo,* 167 P.3d at 680–81; *Spickler,* 618 A.2d at 207 (stating that "[t]he court must be careful not to issue a more comprehensive injunction than is necessary"); *Howard,* 470 S.E.2d at 680 ("[R]estrictions on an inmate's right of access to the courts must be drawn so as to avoid unjustifiably obstructing access to the courts...."); *Hooper v. Harris,* 236 Ga.App. 651, 512 S.E.2d 312, 315 (1999) (vacating a restrictive order because it was overly broad when it declared "all" of an individual's filings "null and void"); *Jordan,* 110 P.3d at 43–44; *Hooker v. Sundquist,* 150 S.W.3d 406, 413 (Tenn.Ct.App.2004) ("[T]he

screening mechanism imposed by the trial court was narrowly tailored and short in duration...."); *Minniecheske,* 468 N.W.2d at 763. One court stated:

> [E]ven though courts may, as a general rule, restrict vexatious litigants' access, constitutional considerations prohibit a complete ban on filings by indigent proper person litigants if the ban prevents the litigant from proceeding in criminal cases and in original civil actions that sufficiently implicate a fundamental right; such orders are impermissible. Since restrictive orders necessarily implicate future filings, which may involve criminal cases or fundamental rights, even broad restrictive orders should set an appropriate standard against which any future filings will be measured.

*Jordan,* 110 P.3d at 43–44 (footnotes omitted).[23]

In this regard, it may be helpful for the court to examine the following five factors identified by the Second Circuit in *Safir v. U.S. Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986): (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

---

**23.** According to 42 Am.Jur.2d *Injunctions* § 78 (2008):

> [I]njunctions restricting court access across the board in situations are very much the exception to the general rule of free access to the courts, and should be issued only when abuse is so continuous and widespread as to suggest no reasonable alternative. For example, injunctions issued pursuant to the All Writs Act power to restrict the filing of meritless pleadings by litigants when the pleadings raise issues identical or similar to those that have already been adjudicated are extreme remedies that should be narrowly tailored and sparingly used....

See also *Cromer,* 390 F.3d at 818 (stating that the use of a pre-filing order "against a pro se plaintiff should be applied with particular caution and should remain very much the exception to the general rule of free access to the courts" (citations and quotations omitted)).

*See also Pavilonis,* 626 F.2d at 1078–79; *Cromer,* 390 F.3d at 818; *Green,* 699 F.2d at 368.

## C. Desirability of a Rule

We have noted that while Maryland courts have the authority to issue a pre-filing order to a frivolous or vexatious litigant, such an order does not fit comfortably within the rules for civil actions or injunctions. It may be desirable for the Rules Committee to consider whether it should propose a rule that expressly authorizes pre-filing orders and establishes procedures for notice, opportunity to be heard, standards for issuance of such orders, appropriate parties, and case captioning.

## CONCLUSION

We conclude that the circuit court's order is reviewable, and that the circuit court possessed authority to issue the order. However, we vacate the order because the circuit court failed to afford appellant due process before its issuance. In closing, we think it is appropriate to note the thoughts expressed in *Cromer* by Judge Diana G. Motz of the Fourth Circuit (and formerly of this Court):

> We recognize that judicial resources are in scarce supply. Meritorious claims often take years to wend their way through our court system, in part because the judicial system is so overburdened. Undoubtedly, the conduct of Cromer, and litigants like him, would frustrate even the most patient. But a judge may restrict a right as fundamental as access to our courts only in limited circumstances and in strict accordance with established protections. That was not done here.

390 F.3d at 820.

**ORDER VACATED. CASES REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY BALTIMORE COUNTY.**