*In the Matter of the Ferndale Volunteer Fire Company, Inc.*, No. 1008, Sept. Term, 2023. Opinion by Tang, J.

**APPEAL AND ERROR – DETERMINATION OF QUESTIONS OF JURISDICTION IN GENERAL – DECISIONS REVIEWABLE – INJUNCTION**

The requester requested information from two county agencies (collectively, the "County") under the Maryland Public Information Act ("MPIA"), Maryland Code, General Provisions Article ("GP"), § 4-101 *et seq.* The County voluntarily produced some of the requested records; however, the County argued that other records (e-mails) were properly withheld and/or redacted. The requester filed a complaint seeking the production of the requested records as well as damages and litigation costs under the MPIA. Subsequently, the requester filed a motion for partial summary judgment, seeking the release of the e-mails. After conducting an *in camera* review, the court denied the motion in part, approving the redaction of fifteen e-mails. The requester appealed. Its claim for damages and litigation costs remained pending before the circuit court.

The order appealed from was interlocutory, rather than a final judgment, because the claim for damages remained pending when the appeal was noted. However, the aspect of the order that approved the redaction of fifteen e-mails is appealable under Maryland Code, Courts and Judicial Proceedings Article ("CJP") § 12-303(3)(iii) as an order refusing to grant an injunction.

An order that grants a request to enjoin the agency from withholding the record under the MPIA—meaning it requires the agency to produce the record—is an injunction. Conversely, an order denying a request to enjoin the agency from withholding a record under the MPIA—thereby allowing the agency to withhold the record—is a refusal to grant an injunction. Although the part of the order at issue did not explicitly deny an injunction, it effectively constituted such a denial by stating that the fifteen e-mails at issue were "properly withheld" by the County. Therefore, it falls within the scope of CJP § 12-303(3)(iii) and is appealable.

**RECORDS – EXAMINATION, INSPECTION, AND DISCLOSURE; PUBLIC ACCESS – EXCEPTIONS AND EXEMPTIONS FROM DISCLOSURE – EXECUTIVE PRIVILEGE – DELIBERATIVE PROCESS PRIVILEGE**

The County claimed that the information contained in the fifteen e-mails was exempt from disclosure because the e-mails contained "confidential executive communications of an

advisory or deliberative nature" under GP § 4-301(a)(1) and/or were "part of the deliberative decision making process" under GP § 4-344.

Due to the lack of clarity in the order as to which exception applies, the part of the order approving the withholding of information contained in the fifteen e-mails is vacated, and the matter is remanded to the circuit court, without affirmance or reversal, for further proceedings.

Circuit Court for Anne Arundel County
Case No. C-02-CV-22-001731

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1008

September Term, 2023

_____

IN THE MATTER OF THE FERNDALE
VOLUNTEER FIRE COMPANY, INC.

_____

Wells, C.J.
Leahy,
Tang,

JJ.

_____

Opinion by Tang, J.

_____

Filed: April 2, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal concerns requests made by the appellant, Ferndale Volunteer Fire Company, Inc. ("Ferndale"), for information under the Maryland Public Information Act ("MPIA"), Maryland Code, General Provisions Article ("GP"), § 4-101 *et seq*.

Ferndale filed a complaint in the Circuit Court for Anne Arundel County against the appellees—the Anne Arundel Fire Department ("Fire Department"), the Anne Arundel County Executive Office ("Executive Office"), and their respective custodians of records (collectively, the "County"). Ferndale requested that the court compel the County to produce withheld records and award Ferndale damages and costs under the MPIA.

The County voluntarily produced some of the requested records; however, it argued that other records (e-mails) were properly withheld and/or redacted. Ferndale filed a motion for partial summary judgment, seeking the release of the e-mails. After conducting an *in camera* review, the court effectively granted the motion in part and ordered the County to produce some of the e-mails. At the same time, it denied the motion in part, approving the redaction of fifteen e-mails.

On appeal, Ferndale presents three questions, which we have rephrased and consolidated into one:[1] Did the circuit court err in approving the County's redactions of

---

[1] In its brief, Ferndale presents the following questions:

1. Did the circuit court err in sustaining the [County's] assertion of privilege under a ground that was not asserted by the [County], and was in fact waived by the [County]?

2. Did the circuit court err in finding that the [County] had established that the redactions to the subject records contained only information protected by the MPIA, and in implicitly finding that the subject records did not

fifteen e-mails? As a threshold matter, we examine whether the court's order is appealable and conclude that it is. As to the question presented, we shall vacate the order and remand for further proceedings.

## I.

## BACKGROUND

## A.

### Ferndale's MPIA Requests

In March and April 2022, Ferndale submitted a series of requests for records to the Fire Department and the Executive Office under the MPIA. In pertinent part, Ferndale requested "all emails, text messages, or meeting minutes" from "January 1, 2019 through the present," that contained the following words and phrases: "John Long," "Chaplain Long," "Jay Olson," "Chief Olson," "Wojtowycz," "Ferndale," "FVFC," "Volunteer Association," "349," "21-01," and "Ashamed." Ferndale sought such documents "to or from" Fire Chief Tricia Wolford ("Wolford"), Deputy Fire Chief Larry Schultz ("Schultz") of the Fire Department, and Chief Administrative Officer Matt Power ("Power") of the Executive Office.

---

contain any information that was severable and required to be disclosed under the MPIA?

3. Did the circuit court err in failing to include any grounds for its order sustaining the [County's] assertion of the [deliberative process] privilege, and in failing to segregate unprotected information or include in its order the reasons that segregation was not possible?

2

**B.**

**County's Response Letters**

In letter responses, the Anne Arundel County Office of Law granted in part and denied in part the MPIA requests. The County withheld and/or redacted various documents, asserting, in relevant part, that they fell under two exemptions under the MPIA. The County stated that the withheld and/or redacted documents contained "confidential executive communications of an advisory or deliberative nature" and thus were exempt from disclosure under GP § 4-301(a)(1). In addition, it asserted that these documents were "part of the deliberative decision making process" and thus were exempt under GP § 4-344. The County attached a *Vaughn* index[2] in which it specified the reason for withholding or redacting documents under one or both exemptions.

**C.**

**Ferndale's Complaint**

On October 18, 2022, Ferndale filed a two-count complaint against the County challenging the County's denial of several requested records. *See* GP § 4-362(a)(1) (providing that, if a custodian denies the application, the applicant may file a complaint with the circuit court for judicial review). The first count alleged that the Fire Department and its custodian of records violated the MPIA by producing partially redacted e-mails

---

[2] A *Vaughn* index itemizes each withheld or redacted record by author, date, and recipient. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (from which the term derives). The index states the exemption claimed and should provide enough information about the subject matter to permit the requester and court to evaluate the justification of the denial.

belonging to Wolford and Schultz. The second count alleged that the Executive Office and its custodian of records violated the MPIA when they produced partially redacted e-mails of Power.

According to Ferndale, the sole ground the County asserted for denying disclosure of unredacted e-mails was the deliberative process privilege under GP § 4-344. It claimed that the County was unable to sustain its burden of production and persuasion in support of its assertion of this privilege and thus Ferndale was entitled to judgment in its favor. Accordingly, Ferndale requested the court to enjoin the County from withholding the requested documents and order the County to produce the documents without redactions. *See* GP § 4-362(c)(3)(i), (ii) (providing that the court may enjoin the agency from withholding the public record or issue an order for the production of the record withheld from the complainant). Ferndale also requested a finding that the County knowingly, willfully, and unlawfully failed to disclose the requested documents and an award of damages, attorney's fees, and litigation costs. *See* GP § 4-362(d), (f).

**D.**

**County's Motion for Summary Judgment**

The County filed a consolidated Memorandum of Law in Support of Denial of Production of Privileged Records ("Memorandum") and Motion for Summary Judgment. *See* GP § 4-362(b)(2) (providing that the agency has the burden of sustaining a decision to deny inspection of a public record and may submit a memorandum to the court to support its decision). At the outset, the County clarified that, contrary to Ferndale's assertion

4

otherwise, the County withheld documents under both the executive privilege under GP § 4-301 and the deliberative process privilege under GP § 4-344.

The County acknowledged that certain redactions were made in error, and it released those e-mails.[3] However, it maintained that the custodians of records properly withheld and/or redacted other e-mails under both the executive privilege and deliberative process privilege. For support, the County attached affidavits from the custodians that included reasons for redacting the e-mails under GP § 4-344. The County also included a revised *Vaughn* index that identified each disputed e-mail by "ID" (which referred to an exhibit number), the subject line of the e-mail, the author and recipient, the date, the "Reason(s) Withheld or Redacted," and the applicable "Statutory Exemption(s)" asserted.

Ferndale opposed the Motion for Summary Judgment. Ferndale argued that the County's motion was premature because it had not yet filed an answer to the complaint, which was the proper vehicle for asserting the defense of privilege. In any event, Ferndale argued that the County failed to provide enough information about the disputed e-mails to enable Ferndale to assess the assertion of any privilege. Ferndale claimed that the County over-redacted the e-mails when it should have disclosed any reasonably segregable portions. Accordingly, Ferndale requested the court review the disputed e-mails *in camera*.

Ferndale claimed that the County never asserted "executive privilege" in those terms in its response letters, the *Vaughn* index, or the custodians' affidavits. Regardless, Ferndale

---

[3] The County produced e-mails identified as Exhibits 1.1, 1.3, 1.5, 2.1, 2.6, 3.3.2, and 3.3.3.

5

argued that the executive privilege, an affirmative defense, must be asserted in an answer, which the County had not yet filed. Thus, the assertion of the executive privilege was not yet before the court. Ferndale argued that even if invoked, the executive privilege was inapplicable and that the County failed to offer any legal analysis regarding the required balancing test under case law.

After a hearing, the court denied the County's Motion for Summary Judgment because it did not have enough information to determine that there were no material facts in dispute. It denied Ferndale's request for *in camera* review because it believed that it was a "merits remedy." However, it ordered the County to file an answer to Ferndale's complaint "to put the case at issue."

The County filed an answer to the complaint. It asserted the affirmative defense of privilege and incorporated by reference the assertions and arguments in the Memorandum and the response letters, custodians' affidavits, and revised *Vaughn* index attached to it.

Thereafter, the court entered an order directing the review of the disputed e-mails *in camera*.

### E.

### Ferndale's Partial Motion for Summary Judgment

Ferndale moved for partial summary judgment ("Motion for Partial Summary Judgment"). It sought resolution of the County's assertion of the deliberative process privilege under GP § 4-344 and reserved for a later date the determination of its request for damages and litigation costs.

Ferndale argued that the County failed to meet its burden of demonstrating that its redactions complied under the narrow confines of the deliberative process privilege. It continued to maintain that the County redacted the e-mails without adequate explanation and that it should have disclosed segregable portions of these e-mails.

The County opposed Ferndale's motion, incorporating by reference the assertions and arguments made in its Memorandum, affidavits, and index.

**F.**

**The Court's Ruling**

The County delivered unredacted copies of the disputed e-mails to the court for an *in camera* review. Thereafter, the court entered an order without a hearing, determining that some of the e-mails were improperly withheld but that the County's redactions to fifteen other e-mails were proper because they contained "confidential executive discussions of an advisory nature." The order read as follows:

> After review of the documents withheld by the [County] in camera and the Court having applied the standard from *Admin. Off. of the Cts. v. Abell Found.*, 480 Md. 63, 92-93, 279 A.3d 976, 992-93 (2022), it is this June 22, 2023, by the Circuit Court of Maryland for Anne Arundel County, hereby:
>
> **ORDERED**, [Ferndale's Partial] Motion for Summary judgment be, and hereby is **DENIED** in part; and it is further
>
> **ORDERED**, that [Exhibits 1.4, 2.2, and 3.1.2] were not properly withheld by the [County]; and it is further
>
> **ORDERED**, that [the County is] enjoined from withholding the aforementioned documents pursuant to [GP] § 4-362; and it is further
>
> **ORDERED**, that [Exhibits 1.2, 1.6, 2.3-2.5, 2.7-2.10, 3.1.1, 3.1.3, 3.1.4, 3.2, 3.3.1, and 3.4] *are confidential executive discussions of an advisory nature and were properly withheld by the [County]*; and it is further
>
> **ORDERED**, that the case may proceed in the ordinary course.

7

(Emphasis added). The unresolved issues still pending before the circuit court are Ferndale's request for damages and litigation costs.

Ferndale appealed from the court's order, challenging the part that approved the redaction of fifteen e-mails.

## II.

## APPEALABILITY

A final judgment is a judgment that "disposes of all claims against all parties and concludes the case." *In re Donald Edwin Williams Revocable Tr.*, 234 Md. App. 472, 490 (2017) (citation omitted). "An order will constitute a final judgment if the following conditions are satisfied: (1) 'it must be intended by the court as an unqualified, final disposition of the matter in controversy;' (2) 'it must adjudicate or complete the adjudication of all claims against all parties;' and (3) 'the clerk must make a proper record of it' on the docket." *Waterkeeper All., Inc. v. Md. Dep't of Agric.*, 439 Md. 262, 278 (2014) (citation omitted); *see* Md. Rule 2-602(a) (providing generally that an order that adjudicates fewer than all of the claims in an action, or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action, is not a final judgment); Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 12-301 (1957, 2023 Supp.) (authorizing appeals only "from a *final judgment* entered in a civil or criminal case by a circuit court" (emphasis added)). A premature appeal is a jurisdictional defect of no force or effect. *Doe v. Sovereign Grace Ministries, Inc.*, 217 Md. App. 650, 662 (2014).

8

The issue of appealability is a threshold one, which we must address on our own motion, whether raised or not. *Off. of State Prosecutor v. Jud. Watch, Inc.*, 356 Md. 118, 125 (1999). The circuit court's order resolved the request for injunctive relief made by Ferndale regarding the remaining documents specified in the two-count complaint. However, the order is not a final judgment because the claim for damages remained pending when the appeal was noted. *See Shenasky v. Gunter*, 339 Md. 636, 638 (1995) (concluding that an order which decides liability but fails to make a determination with regard to the amount of damages is not a final judgment); *Farragut Vill. Condo. Ass'n, Section III v. Bowling*, 168 Md. App. 376, 381 (2006) (same).[4] Thus, the order under review is interlocutory.

There are only three exceptions to the final judgment requirement. *Salvagno v. Frew*, 388 Md. 605, 615 (2005). One exception is immediate appeals permitted under Maryland Rule 2-602(b). Rule 2-602(b) provides in relevant part that if the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment as to one or more but fewer than all of the claims. Here, the court did not make such a determination and, as a result, this rule does not apply to the interlocutory order.

---

[4] In contrast, the unadjudicated claim for statute-based attorney's fees and costs under GP § 4-362 is collateral to the merits of the case. Therefore, if the court had resolved the issue of damages, the unadjudicated claim for statute-based attorney's fees and costs would not deprive the ruling of its status as a final appealable judgment. *See Armstrong v. Mayor of Balt.*, 409 Md. 648, 665 n.13 (2009) (collecting cases).

The second exception to the final judgment requirement is appeals from interlocutory rulings permitted under the collateral order doctrine. To qualify as an appealable collateral order, the order must (1) conclusively determine the disputed question, (2) resolve an important issue, (3) resolve an issue that is completely separate from the merits of the action, and (4) be effectively unreviewable if the appeal had to await the entry of a final judgment. *Ehrlich v. Grove*, 396 Md. 550, 563 (2007).

The interlocutory order in this case is not appealable under the collateral order doctrine because it fails to satisfy, at a minimum, the third criterion. The order is not completely separate from the merits; in fact, it is central to the action. *See, e.g.*, *Jud. Watch*, 356 Md. at 126 (concluding that the interlocutory order requiring the agency to submit a *Vaughn* index was not appealable under the collateral order doctrine because it was inherently intertwined with the merits of the action related to the propriety of withholding documents responsive to the MPIA request).

The third exception to the final judgment requirement is appeals from interlocutory orders authorized by CJP § 12-303. In pertinent part, CJP § 12-303(3) provides that an interlocutory order is appealable if it grants or refuses to grant an injunction. Specifically, a party may appeal from an interlocutory order:

(i)  *Granting* or dissolving *an injunction*, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause;

(ii)  Refusing to dissolve an injunction, but only if the appellant has first filed his answer in the cause;

(iii)  *Refusing to grant an injunction*; and the right of appeal is not prejudiced by the filing of an answer to the bill of complaint or petition for an injunction on behalf of any opposing party, nor by the

10

taking of depositions in reference to the allegations of the bill of complaint to be read on the hearing of the application for an injunction[.[5]]

CJP § 12-303(3) (emphasis added). *See Flower World of Am., Inc. v. Whittington*, 39 Md. App. 187, 192 (1978) ("The common denominator of the exceptions [listed in CJP § 12-303] is the irreparable harm that may be done to one party if [it] had to await final judgment before entering an appeal."). As we explain below, we hold that the order is appealable under CJP § 12-303(3)(iii).

In *Office of State Prosecutor v. Judicial Watch, Inc.*, 356 Md. 118 (1999), the Supreme Court of Maryland addressed for the first time the appealability of an interlocutory order under the MPIA. There, a public interest group, Judicial Watch, filed an MPIA request with the Office of the State Prosecutor ("OSP"), which had an ongoing grand jury investigation into alleged violations related to a White House scandal. *Id.* at 122. The OSP denied the MPIA request and refused to disclose documents or other information it might have had regarding the individuals who were the subjects of the investigation. *Id.*

Judicial Watch brought an action against the OSP, alleging that it violated the MPIA by failing to produce requested documents. *Id.* at 123. The circuit court ordered the OSP to submit, under seal, to the court and Judicial Watch a *Vaughn* index that "word for word, paper for paper" identified all documents responsive to the MPIA request. *Id.* It also

---

[5] The requirement that "the right of appeal is not prejudiced by the filing of an answer to the bill of complaint or petition for an injunction on behalf of any opposing party, nor by the taking of depositions in reference to the allegations of the bill of complaint to be read on the hearing of the application for an injunction," is not at issue here.

11

instructed the OSP to describe each document with the same specificity required by discovery orders in civil cases. *Id.*

The OSP moved to reconsider or, in the alternative, for a stay pending appeal, arguing that all the requested documents related to the ongoing grand jury investigation. *Id.* at 123–24. It further argued that it was sufficient to identify general categories of documents and demonstrate how they would interfere with the ongoing criminal investigation. *Id.* at 124. The court denied the motion to reconsider, ordering the OSP to state "[t]he subject matter of the testimony (i.e., knowledge of whether taping was a violation of the law)" presented to the grand jury. *Id.* The OSP appealed, and the Supreme Court of Maryland, on its own motion, issued a writ of certiorari. *Id.* at 124–25.

The Court granted certiorari to consider the propriety of the circuit court's order requiring the OSP to produce and submit a *Vaughn* index. *Id.* at 125. The Court noted that the order was not the final order sought by Judicial Watch to compel disclosure of the requested documents. *Id.* Thus, the order was interlocutory. *Id.*

On its own motion, the Court addressed whether the interlocutory order was appealable. *Id.* After concluding that the collateral order doctrine was inapplicable, it held that the order was an appealable order under CJP § 12-303(3)(i). *Id.* at 126–27. This was because "an order under [the MPIA] is an injunction, the non-compliance with which is punishable by contempt." *Id.* at 127 (footnote omitted) (citing Maryland Rule 15-501 defining "injunction" as "an order mandating or prohibiting a specified act").

The Court explained that the order directing the OSP to produce the *Vaughn* index was "issued pursuant to the other party's request and in aid of elucidating the issues

12

preliminary to a decision on the merits." *Id.* It was an injunctive order because it required disclosure of information the circuit court found necessary to understand the nature of the dispute. *Id.* The Court further explained that "it has been legislatively determined to be an injunction and to be directly enforceable by contempt." *Id.*

Moreover, the information ordered disclosed was protected by the Maryland grand jury laws. *Id.* at 128; *see* Md. Rule 4-642. The Court explained that secrecy is the "lifeblood of the grand jury" and critical to its proper functioning. *Jud. Watch*, 356 Md. at 128 (citation omitted). "Consequently, the harm against which protection is sought will have occurred the moment that the OSP submits the Vaughn index." *Id.* Thus, the Court concluded that the order was immediately appealable. *Id.*; *see also Md. Dep't of State Police v. Md. State Conf. of NAACP Branches*, 430 Md. 179, 186 n.3 (2013) (citing *Judicial Watch*, concluding that the interlocutory order compelling the agency to produce requested documents was appealable under CJP § 12-303(3)(i) because an order under the MPIA "requiring a governmental custodian to disclose public records[] 'is an injunction'" (citation omitted)).

The instant case does not involve an appeal from the order requiring the County to produce certain e-mails. Instead, Ferndale appeals the aspect of the order denying partial summary judgment, which determined that the County properly withheld the redactions to fifteen e-mails (Exhibits 1.2, 1.6, 2.3–2.5, 2.7–2.10, 3.1.1, 3.1.3, 3.1.4, 3.2, 3.3.1, and 3.4). Therefore, the issue is whether the order that partially denied summary judgment, which allowed the County to withhold information under the MPIA, is an appealable interlocutory order refusing to grant an injunction under CJP § 12-303(3)(iii). No Maryland case has addressed this question in the context of the MPIA.

13

## A.

## Relevant Maryland Law

To determine whether an order qualifies as an injunction within the meaning of CJP § 12-303(3), "Maryland courts typically examine the substance of the order rather than its title." Kevin F. Arthur, *Finality of Judgments and Other Appellate Trigger Issues* § 50, at 95 (4th ed. 2025) ("Arthur"); *see, e.g.*, *Jud. Watch*, 356 Md. at 127 (an interlocutory order requiring the agency to produce a *Vaughn* index was an injunctive order under the MPIA because it required the disclosure of information). The same is true when determining whether an order qualifies as a refusal to grant an injunction under the statute.

In *Howard County v. Eberhart*, 58 Md. App. 407 (1984), we addressed the appealability of an order dismissing one of two claims in a complaint seeking injunctive relief. There, Howard County filed a complaint against the defendants alleging (1) that the use of the property for storing and leasing trucks and for the sale and repair of lawn mowers was an illegal extension of the non-conforming use in violation of the zoning regulations, and (2) that they graded and filled the land in violation of the county code. *Id.* at 412. The County asked the court to enjoin the use of the property for truck storage and leasing, and for lawn mower sales and repairs, and to order compliance with the code regarding the filling and grading of the subject property. *Id.*

The County moved for summary judgment, alleging that there was no genuine dispute that the defendants were using the property for the storage and leasing of trucks and for the sale and repair of lawn mowers. *Id.* The motion did not mention the other claim for the filling and grading violations. *Id.* The court denied the County's motion. *Id.* It

14

entered summary judgment in favor of the defendants and dismissed the County's complaint only as to the zoning violation. *Id.* at 413. Significantly, the dismissal order did not mention the grading and landfill violations; therefore, those aspects of the complaint remained pending before the circuit court. *Id.*

The County appealed. *Id.* at 414. This Court concluded that, by dismissing the complaint as to the alleged illegal extended uses, the circuit court refused to grant the County's request for an injunction in the complaint as to alleged extended uses and thus was appealable under the predecessor to CJP § 12-303(3)(iii) as an order refusing to grant an injunction. *Id.* at 413. We relied on Maryland precedent, explaining that "[a]n order refusing to grant an injunction in a multiple claim action has been upheld as a statutorily appealable order on several occasions." *Id.* (citing *Pappas v. Pappas*, 287 Md. 455, 461–62 (1980); *Funger*, 244 Md. at 150–51; *Della Ratta v. Dixon*, 47 Md. App. 270, 277 (1980)). We went on to explain that "if an appeal is allowed under § 12-303 (or its predecessor statutes), it may be taken without regard to the provisions or conditions of Rule 605a [predecessor to Rule 2-602(a)]. The Rule, in other words, does not serve to preclude or limit an appeal permitted by the statute." *Id.* at 414 (quoting *Della Ratta*, 47 Md. App. at 277).

In *Huertas v. Ward*, 248 Md. App. 187 (2020), we addressed the appealability of an order denying a request to stay a foreclosure sale. There, substitute trustees initiated an action to foreclose on the defendants' home. *Id.* at 194. The defendants requested relief in various motions and responses, one of which was fairly read as a request to stay the foreclosure sale and asked the court to "[v]acate all matters ruled on" in the case and to

15

"[d]ismiss with [p]rejudice" the foreclosure action. *Id.* at 207. We explained that the defendants' "request to stay a foreclosure sale, i.e. to prohibit parties from selling a property, was a request for an injunction." *Id.* Accordingly, we concluded that the order was immediately appealable under CJP § 12-303(3)(iii) to the extent that it denied his request for injunctive relief. *Id.*; *accord Estate of Brown v. Ward*, 261 Md. App. 385, 406 n.5 (2024) (order denying the motion to stay the sale of the house or dismiss the foreclosure action was "not appealable as a final judgment, because the order did not fully adjudicate or complete the adjudication of all claims in the action," but it was "tantamount to an order refusing to grant an injunction" and thus immediately appealable under CJP § 12-303(3)(iii)).

In *Schisler v. State*, 394 Md. 519 (2006), the Supreme Court of Maryland held that a denial of a temporary restraining order was appealable under CJP § 12-303(3)(iii). *Id.* at 536. The dissent disagreed, concluding that, consistent with federal case law, a denial of a temporary restraining order is not appealable. *Id.* at 614 n.1 (Battaglia, J., dissenting). The dissent observed that "federal courts have recognized only one exception to the nonappealability, that being if the denial of the temporary restraining order effectively disposes of the litigation." *Id.* (citing, *inter alia*, *Duvall v. Keating*, 162 F.3d 1058, 1062 (10th Cir. 1998) (observing that denial of motion for temporary restraining order is not appealable unless appellant will suffer irreparable harm absent immediate review "and 'might have a serious, perhaps irreparable, consequence'" (citation omitted))).

The majority concluded that, "[i]rrespective of how the Federal courts may construe a [temporary restraining order] for purposes of Federal practice and procedure, a

16

[temporary restraining order] is clearly in the nature of an injunction under Maryland law." *Id.* at 535 (citing Maryland Rule 15-501(c), defining a "temporary restraining order" as "an injunction granted without opportunity for a full adversary hearing on the propriety of its issuance"). It highlighted the relative breadth of CJP § 12-303(3):

> Section 12-303 of the Courts Article does not distinguish between the types of injunctions, the grant, dissolution, or denial of which are immediately appealable. It does not say that an appeal may be taken only from an order granting, denying, or dissolving a permanent or temporary injunction, but allows interlocutory appeals from such orders involving *any* injunction.

*Id.* at 536 (emphasis in original).

We compare these cases with other Maryland cases addressing the appealability of interlocutory orders that relate to the conduct or progress of litigation, in which parties have argued that such orders should be treated as effectively denying or granting an injunction.

In *Peat, Marwick, Mitchell & Co. v. Los Angeles Rams Football Co.*, 284 Md. 86 (1978), the Supreme Court of Maryland addressed the appealability of an order that denied a party's request to disqualify opposing counsel in a case. *Id.* at 87–88. The petitioner argued that such an order was appealable as a denial of an injunction under the predecessor to CJP § 12-303(3)(iii). *Id.* at 98. The Court disagreed, holding that the order was not appealable as an injunction because it had "no bearing on the merits of the litigation." *Id.* (quoting *Almon v. Am. Carloading Corp.*, 44 N.E.2d 592, 595 (Ill. 1942)).

In *Anne Arundel County v. Cambridge Commons L.P.*, 167 Md. App. 219 (2005), the County sought appellate review of a circuit court order in a class action, which directed, among other things, that the parties prepare a form class notice, and that the County provide a list of prospective class members. *Id.* at 222. In assessing appealability, we ultimately

17

concluded that the order was appealable under the collateral order doctrine. *Id.* at 228. However, relevant to this case, we also examined whether the order was appealable as a grant of an injunction under CJP § 12-303. *Id.* at 227.

We concluded that the order was not appealable under CJP § 12-303. *Id.* We recognized that 28 U.S.C. § 1292(a)(1), the federal counterpart to CJP § 12-303(3), "provides jurisdiction over not just an injunction so-denominated, but over any order having the 'practical effect' of an injunction if the order threatens a 'serious, perhaps irreparable, consequence' and is of such a nature that it can be 'effectively challenged only by immediate appeal.'" *Id.* at 226 (quoting *Cobell v. Norton*, 334 F.3d 1128, 1137 (D.C. Cir. 2003) (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981))).[6]

However, we went on to acknowledge that "[a]n order by [a court] that relates *only to the conduct or progress of litigation* before that court . . . ordinarily *is not considered an injunction* and therefore is not appealable under § 1292(a)(1)." *Id.* (emphasis added) (quoting *Cobell*, 334 F.3d at 1137 (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988))). We also reiterated the principle in *Peat supra*, that such an interlocutory order that has "no bearing on the merits of the litigation" is "not of the character intended to be covered by . . . the [interlocutory appeal] statute." *Id.* (quoting *Peat*, 284 Md. at 98–99). While we referenced "serious, perhaps irreparable, consequence[s]," *see Carson supra*, we did not apply this standard in concluding that the order was not appealable under CJP § 12-303. Instead, we concluded that the interlocutory

---

[6] We discuss *Carson* and its requirements is greater detail in the next section.

order was "not the equivalent of an injunction so as to fall within the purview" of CJP § 12-303. *Id.*

In *Riffin v. Circuit Court for Baltimore County*, 190 Md. App. 11 (2010), we reached a different conclusion regarding an order that arguably concerned only the conduct or progress of litigation. There, the circuit court issued a pre-filing order against the plaintiff upon declaring him a vexatious litigant. *Id.* at 17. The order would require him to seek judicial approval before filing any further pleadings. *Id.* at 18. The plaintiff noted an appeal.

In determining the appealability of the order and finding no Maryland cases on point, we surveyed Maryland and federal cases. *Id.* at 29–30. We concluded that, like most federal courts, a *sua sponte* pre-filing order is "most aptly characterized as an injunction" because it prohibits a specific act. *Id.* We recognized that Maryland Rule 15-502(b) was "clear authority for a Maryland court to issue a pre-filing order" to control the actions of a vexatious or frivolous litigant. *Id.* at 26, 28–29; *see* Md. Rule 15-502(b) (providing that the court, "at any stage of an action and at the instance of any party or on its own initiative, may grant an injunction upon the terms and conditions justice may require"). Accordingly, we concluded that the interlocutory order was appealable under CJP § 12-303(3)(i). *Id.* at 30 (noting that entertaining the appeal of the injunction "comports with the common denominator of the CJP § 12-303 exceptions to the final judgment rule in that 'irreparable harm . . . may be done to one party if he had to await final judgment before entering an appeal'" (quoting *Flower World*, 39 Md. App. at 192)).

19

**Analysis**

Applying the principles established in these cases, we hold that the order approving the redaction of the fifteen e-mails under the MPIA is appealable as an order refusing an injunction under CJP § 12-303(3)(iii). Ferndale filed a complaint that requested that the court "[e]njoin the [County] from withholding" the requested records under GP § 4-362. GP § 4-362(c) of the MPIA incorporates injunctive language concerning inspection requests. It provides that:

> (3) The court may:
>
> (i) *enjoin* the State, a political subdivision, or a unit, an official, or an employee of the State or of a political subdivision *from:*
>
>> 1. *withholding the public record*; or
>> 2. withholding a copy, printout, or photograph of the public record;
>
> (ii) *issue an order for the production of the public record* or a copy, printout, or photograph of the public record *that was withheld from the complainant*; and
>
> (iii) for noncompliance with the order, punish the responsible employee for *contempt*.

GP § 4-362(c)(3) (emphasis added).

Under the MPIA, the court's function in reviewing an agency's denial of a request for a public record is to determine whether to order the disclosure or to permit the agency to withhold the record under the MPIA's exemptions. An order that grants a request to enjoin the agency from withholding the record under the MPIA—meaning it requires the agency to produce the record—is an injunction. *See Jud. Watch*, 356 Md. at 127 (stating that an order requiring disclosure of information under the MPIA is an injunction).

20

Conversely, an order denying a request to enjoin the agency from withholding a record under the MPIA—thereby allowing the agency to withhold the record—is a refusal to grant an injunction.

Although the part of the order in question did not explicitly deny an injunction, it effectively constituted such a denial by stating that the fifteen e-mails at issue were "properly withheld" by the County. Therefore, this refusal to grant an injunction falls within the scope of CJP § 12-303(3)(iii) and is appealable. *See Eberhart*, 548 Md. App. at 413; *Huertas*, 248 Md. App. at 202; *Estate of Brown*, 261 Md. App. at 406 n.5; *Schisler*, 394 Md. at 535–36.

We examined how Maryland law compares with federal authorities and found not only differences between them but also varied approaches among the federal circuits themselves. Analysis of the federal counterpart to CJP § 12-303(3) "may be relevant" to our analysis of interlocutory orders granting or refusing to grant an injunction under CJP § 12-303(3) but it is not binding on us. *See Funger*, 244 Md. at 150; *Schisler v. State*, 394 Md. 519, 535–36 (2006) (concluding that an order denying a request for a temporary restraining order is an appealable interlocutory order, contrary to federal authority). In addition, because the MPIA was to some extent modeled on the Freedom of Information Act, 5 U.S.C. § 522 ("FOIA"), Maryland courts generally give significant weight to federal courts' interpretation of similar provisions in FOIA. *The Abell Found. v. Balt. Dev. Corp.*, 262 Md. App. 657, 669 (2024).

Like CJP § 12-303(3)(iii), 28 U.S.C. § 1292(a)(1) establishes appellate jurisdiction over interlocutory orders refusing injunctions. Among federal courts, "[t]his provision has

21

generated a far more complex body of doctrine than appeals from orders granting injunctions." Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 16 Fed. Prac. & Proc. Juris. § 3924.1 (3d ed. 1998) (Westlaw update Sept. 2025) ("Wright & Miller").

"There is not much complication in the rules dealing with refusal of an *explicit* request for a preliminary injunction[.]" *Id.* (emphasis added). "The language of § 1292(a)(1) should be read at face value when an order *expressly refuses* an explicit request for a preliminary injunction. Appeal is allowed as a matter of right, without attempting to ask whether the circumstances of the case show a risk of serious, perhaps irreparable consequences." *Id.* (emphasis added). The difficulty among federal courts "occurs in determining whether an act that does not *expressly refuse* an injunction can be appealed as a *refusal in effect*. The complications arise in addressing orders that are said to refuse a permanent injunction." *Id.* (emphasis added). The cases summarized below highlight this issue.

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), is often cited as the lead authority for determining the appealability of orders that have the "practical effect" of granting or denying an injunction under § 1292(a)(1). There, the district court disapproved a consent decree that contained injunctive provisions. *Id.* at 81. The Fourth Circuit dismissed the appeal of that order for lack of jurisdiction, holding, among other things, that the order was not "an interlocutory order 'refusing' an 'injunctio[n]'" and was, therefore, not appealable under § 1292(a)(1) (citation omitted). *Id.* at 82. Although the district court's order did not expressly refuse an injunction, the Supreme Court reversed, concluding that

22

the order had the practical effect of refusing an injunction because the consent decree, which the district court rejected, contained injunctive provisions. *Id.* at 83–84.

The Court set forth the following requirements for determining whether an interlocutory order that has the practical effect of refusing an injunction is appealable under § 1292(a)(1) ("*Carson* requirements"):

> Unless a litigant can show that an interlocutory order of the district court might have a "serious, perhaps irreparable, consequence," and that the order can be "effectually challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.

*Id.* at 84.

Federal circuits disagree about when the *Carson* requirements apply. *Brown v. Kerr-McGee Chem. Corp.*, 767 F.2d 1234, 1237–39 (7th Cir. 1985). Several courts read *Carson* narrowly to mean that its requirements apply only to interlocutory orders that do not reach the merits of the appellants' claims or do not dispose of all requests for injunctive relief. *Id.* (collecting cases but noting splits even among panels within the same circuit).

For instance, the D.C. Circuit interprets *Carson* to mean that the requirements do not apply to orders that have the practical effect of denying an injunction "if such orders go to the merits of the case." *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 n.3 (D.C. Cir. 1986). In *Center for National Security Studies v. CIA*, 711 F.2d 409 (D.C. Cir. 1983), the D.C. Circuit articulated a methodology for determining whether an interlocutory order that has the practical effect of refusing injunctive relief in a FOIA case is appealable under § 1292(a)(1):

> If the order fails to address [predominantly all] the merits of the case, appeal will lie under § 1292(a)(1) only if appellant can show some serious, perhaps irreparable, harm resulting from delay caused by denial of review. When, however, the order involves a decision directly addressing [predominantly all] the merits of the case, an immediate appeal is available under § 1292(a)(1).

*Id.* at 412.

There, the Center for National Security Studies ("CNSS") sought disclosure of twelve categories of documents from the Central Intelligence Agency ("CIA") under FOIA. *Id.* at 410. CNSS's initial request for the release of all documents was refused. *Id.* In a fifteen-count complaint, CNSS requested that CIA disclose each category of documents. *Id.* Both parties moved for summary judgment on count VII of the complaint, which requested disclosure of a certain category of documents. *Id.* The district court granted CIA's motion for summary judgment, and CNSS appealed. *Id.*

The D.C. Circuit recognized that the order was not a final judgment because the district court had not reached a final judgment terminating all issues in dispute between the parties. *Id.* at 411. Applying the methodology, the threshold question was whether the district court's order granting summary judgment for CIA was a denial of injunctive relief. *Id.* at 412. The D.C. Circuit concluded that the order plainly had the practical effect of denying CNSS an injunction. *Id.* This was because under FOIA, "a court's function in reviewing an agency denial of a request for documents is ordinarily to determine whether to order disclosure or to permit an agency to withhold such documents under the exemptions of the act. Clearly such a function is injunctive in nature." *Id.*

24

Since the summary judgment order had the practical effect of denying an injunction, the D.C. Circuit turned to the question of whether the district court addressed the merits of CNSS's case. *Id.* It concluded that the district court, as a matter of law, determined that the CIA was protected from disclosure under a FOIA exemption. *Id.* at 413. In so doing, the district court ruled on the merits of count VII, concerning the category of documents related to that count, when it granted summary judgment for CIA. *Id.*

However, the district court did not address the merits of the remaining eleven claims in CNSS's complaint. *Id.* The D.C. Circuit therefore concluded that the order did not resolve predominantly all the merits: "Since the order here did not affect predominantly all of the merits in the case the final inquiry is whether denial of relief under § 1292(a)(1) would cause serious, perhaps irreparable, injury to CNSS." *Id.* The court explained, "Since CNSS has failed to show serious, perhaps irreparable, harm resulting from denial of review we lack jurisdiction under 28 U.S.C. § 1292(a)(1) to review the district court's grant of summary judgment to CIA on count VII." *Id.* at 414.

Like the D.C. Circuit, the Third Circuit concluded that the *Carson* requirements apply to interlocutory orders that do not address the merits of the underlying case. It explained:

> [*Carson*] did not cut back the statutory scope of [§] 1292(a)(1). Rather, [*Carson*] sought to distinguish pretrial procedural orders that had the practical effect of refusing an injunction and could be effectually challenged only at that moment, from procedural orders that did not pose irreparable consequences and could be effectively reviewed on appeal from final judgment. . . . When interlocutory orders do not irrevocably *affect the merits of the controversy*, the Court, in fear of bringing a flood of pretrial orders within the [§] 1292 exception, has been reluctant to compromise the congressional policy against piecemeal appeals.

25

*Tokarcik v. Forest Hills Sch. Dist.*, 665 F.2d 443, 447 (3d Cir. 1981) (internal citations omitted) (emphasis added).

In *Metex Corp. v. ACS Industries, Inc.*, 748 F.2d 150 (3d Cir. 1984), Metex sued a competitor for unfair trade practices. *Id.* at 152. In furtherance of that claim, it sought certain records from the Department of Justice ("DOJ") via a FOIA request. *Id.* When the DOJ resisted, Metex joined it as a defendant in its unfair trade practices claim. *Id.* Metex then moved for summary judgment on the FOIA issue, requesting that the court compel the DOJ to produce the requested documents. *Id.* However, the district court denied the motion, stating that it did not need to determine at that time whether the exemption claimed by the DOJ would protect it from disclosing the requested records. *Id.* Metex immediately appealed. *Id.* at 153.

The Third Circuit examined whether the case was an appealable interlocutory order for refusing to grant an injunction under § 1292(a)(1), ultimately concluding that it was not. *Id.* at 154. It relied on the long-standing rule in the Third Circuit that the statutory language in § 1292 did "not confer jurisdiction to hear an appeal from any denial of summary judgment merely because the granting of the motion would have resulted in an injunction." *Id.* at 154 (citing *Morgenstern Chem. Co. v. Schering Corp.*, 181 F.2d 160, 162 (3d Cir. 1950) (explaining that denials of summary judgment that do not reach the merits of a plaintiff's claim for injunction thus lack the "potential of drastic and far-reaching effect on the rights of the parties which is characteristic of orders which decide the propriety of granting or refusing injunctions")). Applying *Carson*, the Third Circuit concluded that the

26

appellant had not presented any factors indicating that the *Carson* requirements had been met. *Id.*

Like the D.C. and Third Circuits, the Seventh Circuit has interpreted *Carson* to apply narrowly to interlocutory orders that do not resolve the merits of the claim. It explained:

> We note that in recent cases denying interlocutory appeal of orders which have the effect of denying an injunction, the [Supreme] Court has not found jurisdiction under § 1292(a)(1) when the order appealed *failed to address the merits of the case* . . . . Such an order is immediately appealable only if the appellant can show the order might cause serious, perhaps irreparable, harm if appeal were delayed until after final judgment.

*Winterland Concessions Co. v. Trela*, 735 F.2d 257, 261 (7th Cir. 1984) (emphasis added and internal citation omitted).

In *White v. FBI*, 851 F. App'x 624 (7th Cir. 2021), the Seventh Circuit concluded that an order refusing to order the FBI to pick up the pace of its production while the requester's other claims remained pending in district court was appealable without assessing irreparable harm under the *Carson* test.[7] *Id.* at 626–27. It explained that the appeal fell within the exception for interlocutory orders refusing injunctions. *Id.* at 626. It

---

[7] *White* is unreported pursuant to 7th Circuit Rule 32.1(b). Maryland Rule 1-104(b) provides that an unreported opinion issued by a court in a jurisdiction other than Maryland "may be cited as persuasive authority if the jurisdiction in which the opinion was issued would permit it to be cited as persuasive authority or as precedent." Federal Rule of Appellate Procedure 32.1(a) provides that "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and issued on or after January 1, 2007." Accordingly, this Court may consider unpublished federal opinions issued on or after January 1, 2007 for their persuasive value. *Critzos v. Marquis*, 256 Md. App. 684, 695 n.4 (2023).

further explained that the requester had invoked the FOIA provision that "allows a district court 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Id.* at 626–27. "When the district court granted partial judgment for the FBI, albeit postponing formal entry of that order until the case's 'close,' it effectively denied the preliminary injunctive relief that White sought." *Id.* at 627.

The FBI argued that the Seventh Circuit lacked jurisdiction, in part because, under *Carson*, it could not review a ruling denying injunctive relief unless the appealing party faced irreparable harm. *Id.* at 627. The Seventh Circuit rejected the argument and did not apply the *Carson* requirements. *Id.* It explained that the appeal at hand was "even more straightforward" than the circumstance in *Carson*; the matter concerned "*only* a request for preliminary injunctive relief, not the approval of a global consent decree, and his petition was denied. That is enough to secure our jurisdiction over the interlocutory appeal." *Id.*

Unlike the D.C., Third, and Seventh Circuits, other courts apply the *Carson* requirements regardless of whether the district court addressed the merits of an appellant's claims. *Brown*, 767 F.2d at 1237–39 (collecting cases); *see, e.g.*, *Sherri A.D. v. Kirby*, 975 F.2d 193, 203 n.14 (5th Cir. 1992) (recognizing that several circuits do not apply the *Carson* requirements if an order effectively denies an injunction affecting predominantly all the merits of the case but stating that this does not appear to be the rule in the Fifth Circuit); *Ferguson v. FBI*, 957 F.2d 1059, 1064 (2d Cir. 1992) (suggesting that interlocutory orders that do not fit within the appealability standards under § 1292(a)(1) as being in the nature of injunctions require the party to show irreparable harm to support appellate jurisdiction);

28

*Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 851 (Fed. Cir. 1987) (explaining that the *Carson* requirements apply to "all deemed injunctive orders" to establish appealability under § 1292(a)(1)).

We need not resolve any inconsistencies among federal circuits or adopt a particular method used by federal courts to determine if the order in question is appealable. This is because, for the reasons stated earlier, Maryland law provides support for our holding that the order approving the redaction of the fifteen e-mails under the MPIA is appealable as an order refusing an injunction under CJP § 12-303(3)(iii). However, we observe that unlike some federal authorities, the Maryland cases discussed earlier do not require us to examine whether a party would suffer irreparable harm in determining whether an interlocutory order denying or tantamount to denying an injunction is appealable. The plain language of CJP § 12-303(3)(iii) does not require such an assessment, likely because the potential for irreparable harm is already embedded within the statutory exceptions to the final judgment rule. *See Flower World*, 39 Md. App. at 192 (explaining that the "common denominator" of the exceptions listed under CJP § 12-303 is the potential for irreparable harm to a party if it must wait for a final judgment before appealing).[8]

---

[8] This contrasts with an analysis under the collateral order doctrine. The fourth requirement of the doctrine requires an examination of whether the order is effectively unreviewable if the appeal had to await the entry of a final judgment. This condition is only met in a few "extraordinary situations." *In re Foley*, 373 Md. 627, 636 (2003) (citation omitted). Thus, the fourth requirement is to assess whether a party would suffer irreparable harm if forced to wait for a final judgment before appealing. *See, e.g.*, *Milburn v. Milburn*, 142 Md. App. 518, 527 (2002) (fourth requirement satisfied if "reversal of the [o]rder on appeal cannot undo what will have already taken place" (emphasis omitted)); *In re Trust Under Item Ten of Last Will and Testament of Lanier*, 262 Md. App. 396, 418 (2024) (fourth

Having resolved the appealability issue, we turn to the issues raised.

### III.

### MERITS

Both parties interpret the circuit court's order to mean that the court determined that the fifteen e-mails were properly redacted and exempt from disclosure under the executive privilege under GP § 4-301. Ferndale argues that the court erred because the County waived the executive privilege by not asserting it in the custodians' affidavits or the *Vaughn* index.[9] It further argues that, even if the executive privilege was not waived, the court still erred because it failed to follow the proper process for evaluating the executive privilege under *Hamilton v. Verdow*, 287 Md. 544 (1980), and *Office of the Governor v. Washington Post Co.*, 360 Md. 520 (2000).

To the extent the court based its decision on the deliberative process privilege, Ferndale argues that the court also erred. Ferndale contends that the County failed to meet its burden of supporting its denials and blanket redactions for various reasons (i.e., the e-mails were neither "pre-decisional" nor "deliberative"). In addition, Ferndale points out that the court did not demonstrate its evaluation of each e-mail on the basis claimed by the County in the *Vaughn* index and custodians' affidavits. It also maintains that the court erred

---

requirement satisfied where trust funds would likely be exhausted leaving nothing to compensate attorney should the appellate court reverse court's order denying fees from trust assets); *see also* Arthur, § 24 (collecting cases).

[9] Ferndale acknowledges that, in the *Vaughn* index, both privileges were asserted with respect to Exhibit 1.2. But it suggests that the deliberative process privilege was the only one asserted in the relevant custodian's affidavit, and that the affidavit controls.

by failing to sever or segregate privileged from non-privileged content and explain the feasibility of doing so.

The County argues that the court did not err in finding that the e-mails were confidential executive communications of government officials of an advisory or deliberative nature. It maintains that it did not waive the executive privilege exemption under GP § 4-301, which it asserted in its response letters. The County argues that the court did not err in failing to provide grounds for its decision because the court presumably conducted the necessary analysis when it reviewed the e-mails item by item *in camera*. Accordingly, the County urges us to affirm the court's order approving the withholding of the redacted emails under the executive privilege.

## A.

### Overview of Relevant Law

The MPIA generally governs access to public records of "units and instrumentalities" of the State. *Admin. Off. of the Courts v. Abell Found.*, 480 Md. 63, 70 (2022). Generally, a request for access to public records under the MPIA is initiated by submitting a written application to the agency's custodian. *See* GP § 4-202(a).[10] There is a strong presumption in favor of disclosure, such that exemptions from disclosures "must be applied narrowly." *Balt. Action Legal Team v. Off. of State's Att'y of Balt. City*, 253 Md. App. 360, 386 (2021) (quoting *Blythe v. State*, 161 Md. App. 492, 519 (2005)). Thus, a

---

[10] Effective October 1, 2014, the MPIA was recodified as Title 4 of the General Provisions Article. *See* GP §§ 4-101 through 4-601. Before this reorganization, the MPIA could be found in Title 10 of the State Government Article.

custodian cannot invoke a blanket exemption "to shield an entire file if the shielding of only a part of the file would suffice to serve the purpose of the exemption." *Blythe*, 161 Md. App. at 519. Instead, the custodian must "permit inspection of any part of the record that is subject to inspection and is reasonably severable." *Id.*; *see Cranford v. Montgomery Cnty.*, 300 Md. 759, 774 (1984) (stating that the MPIA "requires agencies to utilize the principle of severability in responding to requests for public records"); GP § 4-203(c)(1)(ii) (requiring a custodian who denies the application to "allow inspection of *any part* of the record that is subject to inspection" (emphasis added)). One modality for severing the disclosable from the non-disclosable is by redaction. *Blythe*, 161 Md. App. at 520.

## 1.

### Relevant Exemptions Under GP §§ 4-301 and 4-344

The MPIA recognizes various exceptions to the general right of access to public records. *Admin. Off.*, 480 Md. at 70. "Some of those exceptions are mandatory—that is, the custodian of the record is forbidden from disclosing the record." *Id.* For instance, GP § 4-301(a)(1) provides that "a custodian shall deny inspection of a public record or any part of the public record if: (1) by law, the public record is privileged or confidential[.]" An example of information protected by a recognized privilege is the "executive privilege." *See Wash. Post*, 360 Md. at 556–57. "The doctrine of executive privilege, in addition to protecting military and diplomatic secrets, is chiefly designed to protect confidential

32

advisory and deliberative communications to government officials." *Id.* (citing *Hamilton*, 287 Md. at 558)..[11]

The executive privilege "differs from many other evidentiary privileges" in that "[i]t is for the benefit of the public and not the governmental officials who claim the privilege." *Md. Bd. of Physicians v. Geier*, 225 Md. App. 114, 150 (2015) (quoting *Hamilton*, 287 Md. at 563). In addition, "[a]part from diplomatic, military or other sensitive matters, the privilege is not an absolute one." *Id.* Instead, the privilege "attempts to accommodate the competing interests of a just resolution of legal disputes with the need to protect certain confidential government communications." *Id.*

"Other exceptions are discretionary or conditional—in the sense that the custodian must exercise judgment whether specific records or information satisfy a condition set forth in the statute for being withheld from disclosure." *Admin. Off.*, 480 Md. at 70. GP § 4-344, commonly referred to as the "deliberative process privilege," is one such conditional exemption. This privilege can apply to a broader range of officials than the constitutionally-based executive privilege. Off. of the Md. Att'y Gen., *Maryland Public Information Act Manual*, 3-35 (19th ed. 2024); *see Stromberg Metal Works, Inc. v. Univ. of Md.*, 382 Md. 151, 163 (2004) (distinguishing the executive privilege from the "broader deliberative process privilege").

---

[11] The "executive privilege" "extends beyond the executive branch of government. As it has roots in the constitutional doctrine of separation of powers, a similar privilege extends to the judicial and legislative branches as well." *Hamilton*, 287 Md. at 553 n.3.

33

GP § 4-344 provides that "[a] custodian may deny inspection of any part of an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit." To invoke this conditional exemption, a custodian must "believe" that the requested inspection "would be contrary to the public interest." GP § 4-343; *Admin. Off.*, 480 Md. at 92.

The Supreme Court of Maryland in *Cranford v. Montgomery County*, 300 Md. 759 (1984), outlined three elements that must be satisfied under this exemption for a custodian to deny the right of inspection. First, the records must be "interagency or intraagency memorandums or letters." *Id.* at 771; *see Gallagher v. Off. of Att'y Gen.*, 141 Md. App. 664, 674–75 (2001) (examining the terms "interagency" and "intra-agency"). "To shield a record or part of a record under the deliberative-process privilege, 'the agency ordinarily must establish that the record is both pre-decisional and deliberative.'" *The Abell Found. v. Balt. Dev. Corp.*, 262 Md. App. 657, 708 (2024) (quoting *Stromberg*, 382 Md. at 165) (explaining the distinction between "purely factual data," which generally does not qualify for the privilege, and "deliberative opinions," which do qualify, and noting that the distinction is not always clear and is not rigid).

Second, the records must "not be available by law to a private party in litigation with the agency." *Cranford*, 300 Md. at 772; *see id.* at 774–75 (examining the second element).

Finally, the disclosure to the applicant must be "contrary to the public interest." *Id.* at 772. When a trial court has determined that such a privilege applies, the third element "will typically be satisfied" because "[t]here is a public interest which underlies each

34

legally recognized privilege and, if the privilege applies, it would be at best difficult to say that an agency decision to withhold was contrary to the public interest." *Id.* at 776. However, a document may relate to agency action taken so long ago that disclosing it no longer makes a difference. *Id.* at 772.

If an agency claims the deliberative process privilege exempts a record from disclosure, the MPIA "imposes the burden on the records custodian to make a careful and thoughtful examination of each document which fairly falls within the scope of the request in order for the custodian initially to determine whether the document or any severable portion of the document meets all of the elements of an exemption." *Cranford*, 300 Md. at 777.

**2.**

**Relationship Between Executive and Deliberative Process Privileges**

"The deliberative privilege is a species of executive privilege[.]" *Geier*, 225 Md. App. at 148. The deliberative process privilege under GP § 4-344 "to some extent reflects that part of the executive privilege doctrine encompassing letters, memoranda or similar internal government documents containing confidential opinions, deliberations, advice or recommendations from one governmental employee or official to another official for the purpose of assisting the latter official in the decision-making function." *Wash. Post*, 360 Md. at 551. Thus, the deliberative process privilege "may prevent the disclosure of certain 'confidential advisory and deliberative communications between officials and those who assist them in formulating and deciding upon future governmental action.'" *Balt. Dev.*

*Corp.*, 262 Md. App. at 669 n.1 (quoting *Geier*, 241 Md. App. at 464 (quoting *Hamilton*, 287 Md. at 588)).

"[W]hen a government official makes a formal claim of executive privilege for confidential communications 'of an advisory or deliberative nature, there is a presumptive privilege, with the burden upon those seeking to compel disclosure.'" *Wash. Post*, 360 Md. at 558 (quoting *Hamilton*, 287 Md. at 563). If the court determines that the presumptive privilege does not attach, then the burden remains with the agency to establish that the records are privileged. *Id.* at 561.

Where a sufficient showing is made to overcome the presumption, the court should order an *in camera* inspection to "to determine whether the material is privileged, to sever privileged from non-privileged material if severability is feasible, and to weigh the government's need for confidentiality against the litigant's need for production." *Hamilton*, 287 Md. at 567. The requisite balancing requires the court to "weigh[] the need for confidentiality against the litigant's need for disclosure and the impact of nondisclosure upon the fair administration of justice." *Id.* at 563; *see Wash. Post*, 360 Md. at 561 ("Considering the defendants' assertion of an executive privilege exemption on an item-by-item basis requires application of the balancing test discussed in *Hamilton*, 287 Md. at 564–567[.]"). In sum, when an agency invokes the executive privilege to exempt it from disclosure, "the burden is on the party seeking production to make a preliminary showing that the communications or documents may not be privileged or, in those cases where a weighing approach is appropriate, that there is some necessity for production." *Hamilton*, 287 Md. at 566.

36

## B.

## Analysis

## 1.

## Waiver of Executive Privilege

Preliminarily, we address Ferndale's argument that the County waived the executive privilege. Ferndale did not raise this issue below. At oral argument in this Court, Ferndale claimed that it raised the waiver argument regarding the executive privilege in paragraph 64 of its Motion for Partial Summary Judgment. However, that paragraph concerned an argument that the County waived the deliberative process privilege, not the executive privilege. Accordingly, the claim that the County waived its assertion of the executive privilege was not preserved. *See* Md. Rule 8-131(a) ("Ordinarily, an appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]"); *Balt. Action Legal Team*, 253 Md. App. at 388 (declining to address whether the State's Attorney's Office waived the attorney work-product privilege because the issue was not raised below).

Even if preserved, we would conclude that the County did not waive the claim of executive privilege. In *Hamilton*, the Supreme Court of Maryland required only a "formal claim" of privilege, 287 Md. at 563, not one supported by an affidavit or *Vaughn* index. Under the circumstances of this case, the County satisfied the requirement of making a formal claim of the executive privilege because it asserted in both its response letters and in its Memorandum, which were incorporated by reference in its answer and opposition to Ferndale's Partial Motion for Summary Judgment, that the executive privilege protected

the disputed e-mails. *See Geier*, 225 Md. App. at 148 n.21 (rejecting assertion that agency did not properly present claim of executive or deliberative privilege where agency gave court adequate information about basis for asserted privilege); *see also Gallagher*, 141 Md. App. at 674 (rejecting applicant's argument that the agency never raised a specific privilege and explaining it was apparent from the record that the agency asserted the privilege from the onset, where the agency's response letter stated that numerous documents were withheld based on that privilege).

### 2.

### Remand

Under Maryland Rule 8-604(d), we may remand a case to the circuit court if we find that "the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings." We must "state the purpose for the remand," and the court "shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court." Md. Rule 8-604(d)(1). Under the circumstances here, we are compelled to remand this case, without affirming or reversing, for the court to clarify and articulate the grounds for concluding that the County's redactions of the fifteen e-mails were proper.

The order does not make clear which privilege under which statutory exemption(s) applied to which of the fifteen e-mails in reaching its decision. In the introductory paragraph of the order, the court states that it "applied the standard" from *Administrative Office of the Courts v. Abell Foundation*, 480 Md. 63 (2022), set forth on pages 92–93 of

38

the opinion. The cited pages address the exemption under GP § 4-344 and discuss its overlap with the executive privilege, which encompasses documents containing confidential opinions and deliberations by government employees or officials. Later in the order, the court found that the fifteen e-mails were properly redacted because they contained "confidential executive discussions of an advisory nature," which invoked language used in the County's filings tied to the executive privilege under GP § 4-301.[12]

To the extent that the court concluded that the executive privilege attached to the e-mails, the court did not expressly undertake the burden-shifting and balancing review process as explained in *Hamilton* and *Washington Post*, *supra*. *See Geier*, 225 Md. App. at 147–48, 152 (vacating court's order because the court did not expressly balance "the need for confidentiality against the [applicant's] need for disclosure and the impact of nondisclosure upon the fair administration of justice"; remanding case so the court could conduct the requisite balancing on a document-by-document basis).

Because of the lack of clarity in the order, we are compelled to vacate the part of the court's order that approved the redactions of the fifteen e-mails and remand for further proceedings. *See, e.g.*, *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Just.*, 823 F.2d 574, 589 (D.C. Cir. 1987) (remanding for more complete accounting of trial

---

[12] For instance, in the County's Memorandum which was incorporated by reference in its opposition to Ferndale's Motion for Partial Summary Judgment, the County argued that Wolford's communications are considered "confidential executive communication of an advisory or deliberative nature. Such communications are exempt from disclosure under [GP § 4-301]." The County framed the executive privilege in the same way in connection with Schultz's and Power's communications.

court's order where it merely declared it was satisfied that FOIA exemption was properly invoked); *Baez v. U.S. Dep't of Just.*, 647 F.2d 1328, 1340 (D.C. Cir. 1980) (explaining that the trial court "must provide an adequate basis for its decision so that neither the parties nor the reviewing court is left to speculate how [it] reached its final determination"); *Pennington v. Washtenaw Cnty. Sheriff*, 336 N.W.2d 828, 833–34 (Mich. App. 1983) (explaining that remand was necessary because the court, after conducting an *in camera* review, made only conclusory findings that made review by the appellate court impossible). On remand, the court may request further briefing from the parties and conduct further hearings as needed.

**ORDER OF JUNE 22, 2023 THAT EXHIBITS 1.2, 1.6, 2.3–2.5, 2.7–2.10, 3.1.1, 3.1.3, 3.1.4, 3.2, 3.3.1, AND 3.4 WERE PROPERLY WITHHELD BY APPELLEES VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND APPELLEES.**